No. 55,291

STATE OF KANSAS, *Appellee,* v. VERNON D. REVES, *Appellant.*

(666 P.2d 1190)

Opinion
filed July 15, 1983.

*Lawrence P. Ireland,* of Ireland, Enright & Baird, of Topeka, was on the brief for the appellant.

*Robert T. Stephan,* attorney general, and *Micheal A. Ireland,* assistant county attorney, were on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a jury verdict finding Vernon D. Reves (defendant-appellant) guilty of driving under the influence of alcohol or drugs. K.S.A. 8-1567.

The appellant contends 1982 Senate Bill No. 699 (L. 1982, ch. 144), which amended K.S.A. 1981 Supp. 8-1567 governing alcohol or drug-related traffic offenses and penalties therefor, violates art. 2, § 16, of the Kansas Constitution and is invalid. This provision of the constitution, as amended in 1974, reads in part:

"No bill shall contain more than one subject, except appropriation bills and bills for revision or codification of statutes. The subject of each bill shall be expressed in its title. . . . The provisions of this section shall be liberally construed to effectuate the acts of the legislature."

The appellant contends the act contains more than one subject and points to the title of the act as evidence thereof. The title reads:

"An Act relating to certain alcohol and drug-related traffic offenses; relating to penalties for certain prohibited acts; providing for the establishment of an alcohol and drug safety action program; amending K.S.A. 8-255, 22-2908, 22-2910, 22-3609a and 22-3610 and K.S.A. 22-2909 and 22-2911, as amended by 1982 House Bill No. 3036, and K.S.A. 22-3609, as amended by 1982 Senate Bill No. 822 and K.S.A. 1981 Supp. 8-285, 8-1001, 8-1005 and 8-1567 and repealing the existing sections."

The act itself contains 23 sections and is quite lengthy. It is necessary to discuss the various provisions of the act in order to determine whether or not more than one subject is addressed therein. The act amended several existing statutes and enacted eight new statutes. Included in the amendments to existing statutes were numerous minor changes in wording which, with the exceptions noted below, are unimportant to the issue and need not be reviewed in detail.

Section 1 amended K.S.A. 8-255, governing procedures and grounds for suspension of drivers' licenses, to provide that "[e]xcept as provided by K.S.A. 1981 Supp. 8-1001 and amendments thereto, the hearing [on a license suspension or revocation] shall be held in the licensee's county of residence or county adjacent thereto : . . ." K.S.A. 1981 Supp. 8-1001, amended by Section 3, establishes a motor vehicle operator's implied consent to submit to a blood alcohol test and the procedure for such test. The amended portion reads:

"(c) If the person so arrested refuses a request to submit to a test of breath or blood, it shall not be given and the person's refusal to submit to the test shall be admissible in evidence against the person at any trial for driving under the influence of alcohol. The arresting officer shall make a report verified on oath to the division of vehicles of the refusal, stating that prior to the arrest the officer had reasonable grounds to believe that the person was driving under the influence of alcohol. Upon receipt of the report, the division immediately shall notify the person of the right to be heard on the issue of reasonableness of the failure to submit to the test. If, within 20 days after such notice is mailed, the person makes a written request for a hearing, the division shall hold a hearing in the county where the alleged violation occurred, or in a county adjacent thereto, within the time and in the manner prescribed by K.S.A. 8-255 and amendments thereto. Notice of the time, date and place of hearing shall be given to the person by restricted mail, as defined by K.S.A. 60-103. If a hearing is not requested or if after the hearing, the division finds that the refusal was not reasonable, and after due consideration of the record of motor vehicle offenses of the person, the division shall suspend the person's license or permit to drive or nonresident operating privilege for a period of not less than 120 days and not more than one year."

Section 2 amended K.S.A. 1981 Supp. 8-285 which defines the term "habitual violator" as a person who has been convicted in the past five years of three or more of the offenses listed in the statute. It was amended to include:

"For the purpose of part (a)(2) of this section [driving under the influence of alcohol or drugs] in addition to the definition of 'conviction' otherwise provided by law, conviction includes, but is not limited to, a diversion agreement entered into in lieu of further criminal proceedings, or a plea of nolo contendere, on a complaint, indictment, information, citation or notice to appear alleging a violation of K.S.A. 1981 Supp. 8-1567 and amendments thereto or an ordinance of a city in this state or law of another state, which ordinance or law prohibits the acts prohibited by that statute."

Section 4, amending K.S.A. 1981 Supp. 8-1005, concerns the admission of and weight to be given evidence of a driver's blood alcohol content in a prosecution for driving under the influence of alcohol or drugs. Section 5 extensively revised K.S.A. 1981 Supp. 8-1567, prohibiting driving under the influence of alcohol or drugs and penalties therefor. In addition to fines and imprisonment, the penalties include requiring the offender to enroll in and to successfully complete an alcohol and drug safety action program or a treatment program, as provided in Section 10 (now K.S.A. 8-1008). Depending on the number of previous convictions of this offense, the driver will also have his license restricted, suspended or revoked. Subsection (h) provides that the court report every conviction, plea of guilty, and diversion agreement entered into in lieu of further prosecution to the division of motor vehicles. Subsection (i) reads:

"For the purpose of determining whether a conviction is a first, second or third or subsequent conviction for the purpose of sentencing under this section, the term 'conviction' includes pleading guilty to a violation of this section, pleading nolo contendere to a violation of this section, being convicted of a violation of this section or entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging a violation of this section. For such purpose 'conviction' also includes pleading guilty to an ordinance which prohibits the acts that this section prohibits, being convicted of such an ordinance or entering into a diversion agreement in lieu of further criminal proceedings in a case alleging a violation of such an ordinance. For the purpose of this section, only convictions occurring in the next preceding five years shall be taken into account."

Subsection (n) allows cities to enact ordinances prohibiting driving under the influence of alcohol or drugs, but such ordinances may not provide penalties which exceed or are less than the penalties prescribed by the statute.

Sections 6, 7, 8, 9, and 11 deal with diversion agreements entered into in lieu of prosecution by a person charged with violation of 8-1567. Section 6 amended K.S.A. 22-2908, which sets forth the factors to be considered by the county or district attorney in determining whether a defendant should be offered a diversion agreement. The amendment added the following provision:

"(2) A county or district attorney shall not enter into a diversion agreement in lieu of further criminal proceedings on a complaint alleging a violation of K.S.A. 1981 Supp. 8-1567 and amendments thereto if the defendant has previously participated in diversion upon a complaint alleging a violation of that statute or an ordinance of a city in this state which prohibits the acts prohibited by that statute or has previously been convicted of or plead nolo contendere to a violation of that statute or an ordinance of a city in this state which prohibits the acts prohibited by that statute."

K.S.A. 22-2909, amended by Section 7, sets forth provisions which are to be included in a diversion agreement. The statute was amended to require that a stipulation be contained in the agreement of the facts upon which the charge is based and a provision that if the defendant fails to fulfill the terms of the agreement and criminal proceedings are resumed, the proceedings, including those on appeal, shall be conducted on the record of the stipulation of facts. As part of the agreement the defendant is also required to pay the minimum fine for a first offense or perform community service in accordance with 8-1567, and complete an alcohol and drug safety program or treatment program.

K.S.A. 22-2910, concerning the admissibility of diversion agreements in evidence, was amended by Section 8 to allow certain evidence concerning the diversion agreement to be admissible in a prosecution for violation of 8-1567 resumed for failure to comply with the terms of the agreement. Section 9 amended K.S.A. 22-2911 to require that a record of participation in a diversion program entered into in lieu of prosecution for a violation of 8-1567 be forwarded to the division of vehicles for future use in habitual violator proceedings or prosecutions for violation of 8-1567. Section 11 (now K.S.A. 8-1009) directs when a prosecuting attorney is to make a determination of whether a diversion agreement is to be offered in a prosecution for a violation of either 8-1567 or an equivalent municipal ordinance.

Sections 12, 13, 14, 15, 16, and 17 deal with diversion agreements entered into in lieu of prosecutions for violation of municipal ordinances prohibiting acts prescribed by 8-1567. Section 12 (now K.S.A. 12-4413) defines the terms used in Sections 11 to 18. Section 13 (now K.S.A. 12-4414) sets forth when diversion agreements should be offered in municipal prosecutions for alcohol or drug-related traffic offenses, requires guidelines to be established by the city attorney for the implementation of a diversion program and establishes a defendant's right to counsel in such prosecutions. Section 14 (now K.S.A. 12-4415) is the equivalent of Section 6 (K.S.A. 22-2908), setting forth the factors to be considered by the city attorney in offering diversion programs in municipal prosecutions. Section 15 (now K.S.A. 12-4416) sets forth the provisions to be included in the diversion agreements in municipal prosecutions for alcohol or drug-related traffic offenses, and is similar to Section 7 (K.S.A. 22-2909). Section 16 (now K.S.A. 12-4417) prohibits a guilty plea as a condition of diversion and renders evidence of a proposed agreement inadmissible in a prosecution of the charges. Section 17 (now K.S.A. 12-4418), is identical to Section 9 (K.S.A. 22-2911), except that it applies only to diversion agreements in municipal prosecutions for alcohol and drug-related traffic offenses, omitting subsection (c) of Section 9.

Section 10 (now K.S.A. 8-1008) establishes a state alcohol and drug safety action program to be administered by the secretary of social and rehabilitation services for evaluation, supervision and monitoring of all persons who plead nolo contendere to or are convicted of a violation of K.S.A. 8-1567 or an equivalent municipal ordinance. Subsection (c) provides that presentencing reports and drug evaluation reports shall be conducted on anyone convicted of 8-1567, which shall be considered by the court prior to sentencing. Subsection (d) establishes a fund for the program and establishes a fund for the program and assesses a fee against persons convicted of the offense to support the fund.

Sections 18, 19 and 20, amending K.S.A. 22-3609, 22-3609a and 22-3610 respectively, deal with appeals from municipal court or district magistrate judges to the district court. The amendments provided that an appeal to the district court in a prosecution for violation of 8-1567 or an equivalent municipal ordinance, which is resumed upon failure of the defendant to fulfill the terms of a

diversion agreement, shall be conducted upon the stipulation of facts contained in the agreement relating to the charge. The remaining provisions provide for severability of the act, repeal of existing statutes and the effective date of the act.

The requirements of art. 2, § 16, of the Kansas Constitution were discussed in *State ex rel. Stephan v. Thiessen*, 228 Kan. 136, 143, 612 P.2d 172 (1980):

" 'In order to correctly interpret that provision of § 16, article 2 of the constitution, which provides that "No bill shall contain more than one subject, which shall be clearly expressed in its title," its object must be taken into consideration; and the provision must not be construed or enforced in any narrow or technical spirit, but must be construed liberally on the one side, so as to guard against the abuse intended to be prevented by it, and liberally on the other side, so as not to embarrass or obstruct needed legislation.'

" 'Under this provision of the constitution, the title of an act may be as broad and comprehensive as the legislature may choose to make it; or it may be as narrow and restricted as the legislature may choose to make it. It may be so broad and comprehensive as to include innumerable minor subjects, provided all these minor subjects are capable of being so combined and united as to form only one grand and comprehensive subject; or it may be so narrow and restricted as to include only the smallest and minutest subject.'

" 'And while the title to an act may include more than one subject, provided all can be so united and combined as to form only one single, entire, but more extended subject; yet, neither the title to the act nor the act itself can contain more than one subject, unless all the subjects which it contains can be so united and combined as to form only one single subject.'

. . . .

" 'Where a section of an act is assailed as being in contravention of said provision of § 16, article 2 of the constitution, it is sufficient if it is germane to the single subject expressed in the title and included therein, provided the act itself does not contain more than this single subject.'

. . . .

" 'Where an act contains two separate and independent subjects, having no connection with each other, and the title to the act is broad enough to cover both, *held,* that probably, as a general rule, the act is unconstitutional and void.' "

In *State, ex rel., v. Kansas Turnpike Authority*, 176 Kan. 683, 697, 273 P.2d 198 (1954), it was held that art. 2, § 16, should not be construed narrowly or technically to invalidate proper and needful legislation, and that where the subject of the legislation is germane to other provisions, the act is not objectionable as containing more than one subject or as containing matter not expressed in the title. The purpose of the constitutional section was described in *Garten Enterprises, Inc. v. City of Kansas City*, 219 Kan. 620, 622, 549 P.2d 864 (1976), as including:

"[T]he prevention of a matter of legislative merit from being tied to an unworthy matter, the prevention of hodge-podge or log-rolling legislation, the prevention of surreptitious legislation, and the lessening of improper influences which may result from intermixing objects of legislation in the same act which have no relation to each other."

A thorough discussion of what violates a constitutional prohibition against more than one subject in an act is found in 73 Am. Jur. 2d, Statutes § 125:

"The constitutional prohibition of more than one subject in an act does not impose any limitation on the comprehensiveness of the subject, which may be as comprehensive as the legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject and not several. To constitute plurality of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair intendment can be considered as having any legitimate connection with or relation to each other. Within the meaning of the constitutional provision, matters which apparently constitute distinct and separate subjects are not so where they are not incongruous and diverse to each other. Generally speaking, the courts are agreed that a statute may include every matter germane, referable, auxiliary, incidental, or subsidiary to, and not inconsistent with, or foreign to, the general subject or object of the act. The constitutional provision is not intended, nor should it be so construed as, to prevent the legislature from embracing in one act all matters properly connected with one general subject or object, but the term 'subject' or 'object' as used in these provisions is to be given a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters fairly, reasonably, naturally, logically, properly, or directly or indirectly connected with, or related to, each other or the same subject or object. It has been said that there can be no surer test of compliance with the constitutional requirement of singleness of subject than that none of the provisions of an act can be read as relating or germane to any other subject than the one named in the title."

See also 82 C.J.S., Statutes § 218. It has further been held that a court should not declare a statute violative of art. 2, § 16, of the Kansas Constitution unless invalidity is manifest. *State v. Roseberry*, 222 Kan. 715, 717, 567 P.2d 883 (1977). See also 73 Am. Jur. 2d, Statutes § 123; 82 C.J.S., Statutes § 218, p. 362.

The appellant contends 1982 Senate Bill No. 699 contains a myriad of subjects, including the separate and distinct "subjects" of suspension and revocation of drivers' licenses for all types of traffic offenses, admissibility of blood alcohol test results and presumptions to be attached thereto in prosecutions for alcohol-related traffic offenses, the forfeiture of drivers' licenses for failure to submit to alcohol blood tests, prohibition against driving under the influence of alcohol or drugs, the use of diversion agreements for all criminal prosecutions in the district court,

establishment and funding of an alcohol and drug safety action program, diversion programs in all municipal prosecutions, and appeal procedures in all municipal prosecutions. The appellants' argument construes the requirements of art. 2, § 16, in the strictest and most narrow sense and would require the nullification of Senate Bill No. 699 in its entirety as unconstitutional.

A review of Senate Bill No. 699 reveals that, with the exception of minor and innocuous changes in the wording of existing statutes, all of the revisions to existing statutes and newly enacted provisions contained in the act relate in some way to the comprehensive subject of alcohol and drug-related traffic offenses and prosecution thereof. The act does include minor "subjects" such as the use of diversion agreements in lieu of prosecution for certain offenses in both district court and municipal prosecutions and the establishment of an alcohol and drug safety action program for persons convicted of driving under the influence of alcohol or drugs, but these all relate to the comprehensive subject of alcohol and drug-related traffic offenses, which is the subject expressed in the title of the act.

In enacting Senate Bill No. 699 the Legislature sought to provide a comprehensive scheme for the stricter enforcement and prosecution of alcohol or drug-related traffic offenses and the enhancement of penalties therefor. To accomplish this end it was necessary for the legislature to amend existing statutory provisions relating generally to subjects other than alcohol and drug-related traffic offenses, including suspension and revocation of drivers' licenses, admissibility of evidence of a driver's blood alcohol content or refusal to take a blood alcohol test, the use of diversion agreements by county or district attorneys in lieu of prosecution for various criminal offenses, and the record on appeal in municipal and district court prosecutions resumed upon failure to comply with a diversion agreement. The establishment of an alcohol and drug safety action program and treatment program directly relates to the amendment of K.S.A. 8-1567 requiring a person convicted of driving under the influence of alcohol or drugs to enroll in such a program as part of the penalty imposed. The provisions allowing municipal ordinances to be enacted which prohibit acts proscribed by 8-1567, and the use of diversion agreements in prosecutions for violation of such ordinances, ensure consistency in the enforcement and prosecu-

tion of all alcohol and drug-related traffic offenses in the district and municipal courts, and therefore are directly related to the subject of the act.

These provisions are all germane to the broad encompassing subject of alcohol and drug-related traffic offenses. None of the revisions to existing statutes or newly enacted provisions contained in the act can be said to be so diverse or dissimilar as to have no legitimate connection or relation to the subject of alcohol or drug-related traffic offenses. The 1974 amendment to art. 2, § 16, of the Kansas Constitution expressly provided that "[t]he provisions of this section *shall be liberally construed* to effectuate the acts of the legislature." The appellant's motion to dismiss the complaint on the grounds that 1982 Senate Bill No. 699 contained more than one subject was properly overruled.

A laundry list of other constitutional challenges to Senate Bill No. 699 is contained in the conclusion to the appellant's brief. These points were neither briefed nor argued before the trial court, other than their inclusion in a similar fashion in the conclusion of the appellant's motion to dismiss. Two of these challenges, that K.S.A. 8-1001 violates the 5th and 14th amendments to the United States Constitution and § 10 of the Kan. Const. Bill of Rights by allowing evidence of an accused's refusal to take a blood alcohol test to be admissible in a prosecution for driving under the influence of alcohol, and that K.S.A. 8-1567 violates the separation of powers doctrine were addressed by this court in *State v. Compton,* 233 Kan. 690, 664 P.2d 1370 (1983), where it was held these statutes were not unconstitutional. None of the points listed by the appellant in the conclusion of his brief were adequately raised before the trial court or briefed on appeal, and therefore are not properly before the court for review.

The judgment of the lower court is affirmed.