(737 P.2d 880)

No. 59,856

STATE OF KANSAS, *Appellee,* v. STANLEY E. LARSON, *Appellant.*

Opinion filed June 4, 1987.

*Jonathan B. Phelps,* of Topeka, for appellant.

*Arthur R. Weiss,* assistant district attorney, *Gene M. Olander,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

*James G. Keller,* of the Kansas Department of Revenue, of Topeka, for *amicus curiae.*

Before MEYER, P.J., BRAZIL and DAVIS, JJ.

BRAZIL, J.: Stanley E. Larson appeals his conviction for driving with a blood or breath alcohol concentration of .10 or above. K.S.A. 1986 Supp. 8-1567(a)(1).

On February 3, 1986, Kansas Highway Patrol Trooper Robert Shows stopped Larson for driving 72 miles per hour on I-470 in or near Topeka. While discussing this infraction with Larson, Trooper Shows noticed Larson's speech was slurred and that he was slow in locating his driver's license. Trooper Shows asked Larson to get out of his car and then had him perform several

field sobriety tests. Trooper Shows also noticed Larson's breath had "a strong odor of an alcoholic beverage." He concluded Larson was under the influence of alcohol and arrested him for driving under the influence (DUI).

Larson testified that he told Trooper Shows before the field sobriety tests that he had had three beers. Trooper Shows testified this conversation occurred after he arrested Larson. Larson claimed he told Trooper Shows he had a defect in his left eye and that he would not do well on any coordination or depth perception test and would prefer some other field sobriety test be performed. Trooper Shows did not remember this at trial.

After arresting Larson, Trooper Shows read him his *Miranda* warnings and also an implied consent advisory. Trooper Shows asked Larson, and he agreed, to blow into a "crimper box" to take a sample for an alcohol concentration test. Trooper Shows placed the sample and a report form in a box with Larson's name on it, sealed the box, and marked the seals with Trooper Shows' own initials. When he took Larson to highway patrol headquarters and booked him, Trooper Shows put this box in the "GC room." The "GC room" is apparently the room where the gas chromatograph intoximeter machine is kept. Trooper Raymond Gonzales broke the seals and tested the breath sample on February 4, 1986. The sample was held in three compartments in the crimper so each could be tested separately, and according to Gonzales, the results were .100, .104, and .100 on the three tests.

Larson moved to suppress the test results on the ground Trooper Shows did not have probable cause to request an alcohol concentration test. The district court denied the motion.

Larson testified that he went to highway patrol headquarters on February 5 and was told the sample had not yet been tested. He returned the following day and was told the results were .10.

Larson's case was tried to the court. At the close of the State's evidence, the district court granted a directed verdict of not guilty on the charge under K.S.A. 1986 Supp. 8-1567(a)(2) on Larson's motion because the State had not shown Larson was incapable of driving safely. However, at the end of the trial, the district court found Larson guilty of speeding and of driving under the influence of alcohol as defined in K.S.A. 1986 Supp. 8-1567(a)(1), that is, with an alcohol concentration in his breath of .10 within two hours after driving.

I. Constitutionality of K.S.A. 1986 Supp. 8-1567(a)(1).

On appeal Larson first contends K.S.A. 1986 Supp. 8-1657(a)(1) is unconstitutional because (a) it creates an irrebutable presumption of guilt; (b) it is impermissibly vague; (c) it establishes a standard which is arbitrary, capricious, and unreasonable; or (d) the act adopting it contained more than one subject.

The 1985 legislature amended K.S.A. 1984 Supp. 8-1567 to read in pertinent part as follows: "(a) No person shall operate or attempt to operate any vehicle within this state while: (1) The alcohol concentration in the person's blood or breath, at the time or within two hours after the person operated or attempted to operate the vehicle, is .10 or more." K.S.A. 1986 Supp. 8-1567. The court of appeals recently held, "The clear language of 8-1567(a)(1) makes the fact of driving with such blood or breath alcohol concentration a crime without any further showing being required." *State v. Zito,* 11 Kan. App. 2d 432, 434, 724 P.2d 149 (1986). Larson argues this change in the law is unconstitutional for several reasons.

(a) Irrebuttable Presumption

Larson asserts that the amendment "grants the State the benefit of an evidentiary device which enables it to prove one factor by proof of another distinct factor." He cites and discusses various United States Supreme Court cases considering the constitutionality of certain presumptions. In McCormick on Evidence, the following pertinent definitions are stated:

"[A] presumption is a standardized practice, under which certain facts are held to call for uniform treatment with respect to their effect as proof of other facts.

. . . .

"Certainly the description of a presumption as a rule that, at a minimum, shifts the burden of producing evidence is to be preferred, at least in civil cases. . . . In criminal cases, however, there are rules that traditionally have been labeled presumptions, even though they do not operate to shift even the burden of producing evidence. The jury is permitted but not required to accept the existence of the presumed fact even in the absence of contrary evidence.

. . . .

"There are rules of law that are often incorrectly called presumptions that should be specifically distinguished from presumptions at this point:

"*Conclusive presumptions.* The term presumption as used above always denotes a rebuttable presumption, i.e., the party against whom the presumption operates can always introduce proof in contradiction. In the case of what is

commonly called a conclusive or irrebuttable presumption, when fact B is proven, fact A must be taken as true, and the adversary is not allowed to dispute this at all. For example, if it is proven that a child is under seven years of age, the courts have stated that it is conclusively presumed that he could not have committed a felony. In so doing, the courts are not stating a presumption at all, but simply expressing the rule of law that someone under seven years old cannot legally be convicted of a felony." McCormick on Evidence § 342, pp. 965-66 (3rd ed. 1984).

The cases cited by Larson all involve true presumptions as defined in McCormick. See, *e.g., Francis v. Franklin,* 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965 (1985); *Ulster County Court v. Allen,* 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979). See also McCormick on Evidence §§ 347-48 (discussing the Supreme Court decisions). By enacting K.S.A. 1986 Supp. 8-1567(a)(1), however, the legislature created at most a conclusive presumption as defined in McCormick, that is, a new rule of law that someone who drives with a blood or breath alcohol concentration of .10 or above has driven under the influence of alcohol and may not present evidence to rebut this rule. Actually, being under the influence of alcohol is not an issue at all under K.S.A. 1986 Supp. 8-1567(a)(1). As the court held in *Zito,* 11 Kan. App. 2d 432, the fact of driving with an alcohol concentration of .10 or above is now a crime, even in a case like ours where the State cannot prove the driver was under the influence of alcohol to the extent he or she is incapable of driving safely. 11 Kan. App. 2d at 434.

We suspect that much of the confusion regarding this new crime as defined in K.S.A. 1986 Supp. 8-1567(a)(1) arises because the title to the statute remains "Driving under influence of alcohol or drugs." The title or caption prefacing the text of a statute is prepared by the revisor of statutes (K.S.A. 77-133[b]) and "forms no part of the statute itself." *State v. Logan,* 198 Kan. 211, 217, 424 P.2d 565 (1967).

Notwithstanding the statute's title, K.S.A. 1986 Supp. 8-1567(a)(1) constitutes a new rule of law, not a presumption.

(b) Vagueness

"In determining whether a statute is void for vagueness two inquiries are appropriate: (1) whether the statute gives fair warning to those persons potentially subject to it, and (2) whether the statute adequately guards against arbitrary and

discriminatory enforcement." *State v. Robinson*, 239 Kan. 269, 273, 718 P.2d 1313 (1986). Larson attacks the statute only on the first ground, arguing a person cannot determine through his own senses whether his alcohol concentration has reached the impermissible limit.

It is common knowledge that a machine or process must be used to test blood or breath to determine whether a person's alcohol concentration exceeds the statutory limit. It is also common knowledge that one must drink more than a little alcohol to reach the limit. Furthermore, the standard of 8-1567(a)(1), in our opinion, is more precise than 8-1567(a)(2), "under the influence of alcohol," and the latter was held not to be unconstitutionally vague in *State v. Campbell*, 9 Kan. App.2d 474, 475, 681 P.2d 679 (1984). Finally, if Larson's argument is accepted, it seems that speed limits would also be too vague (or at least could not be enforced against anyone whose speedometer was broken), since no one can tell simply by use of their own senses the precise speed they are traveling.

K.S.A. 1986 Supp. 8-1567(a)(1) is not unconstitutionally vague.

c. Arbitrary, capricious, or unreasonable

Larson argues that "[t]here is no legal or scientific basis for the legislative determination that .10% blood alcohol content constitutes a dangerous level of alcohol." In other words, Larson argues that the legislature's choice of .10 alcohol concentration as the legal limit is arbitrary, capricious, and unreasonable. We disagree.

In studies involving driving simulators and actual driving tests, "it was seen that with an alcohol content in the blood of .10% or more, some degree of impairment of performance was discernible in virtually all individuals." 4 Gray, Attorneys' Textbook of Medicine ¶ 133.52(2) (3d ed. 1969). A 1964 study evaluated the effect of increasing blood alcohol levels on the probability of causing an accident and found, "Above [.05 per cent] the probability of causing an accident rises increasingly more sharply. At .10 per cent alcohol in the blood the probability is six- or seven-fold; at .15 per cent it is more than twenty-five-fold." 4 Gray, ¶ 133.52(3). Gray also includes an extensive bibliography of studies, articles, and other research on the effects of alcohol on

the body and driving ability. See 4 Gray, ¶ 133.90, pp. 133-25 to 133-40 and ¶ 133.90, pp. 139-42 (1986 Supp.).

Furthermore, a government publication states that a provision like K.S.A. 1986 Supp. 8-1567(a)(1) was added to the Uniform Vehicle Code in 1971, using .10 as the standard, and that by 1983, at least 25 states had adopted a similar provision, apparently all but one of them using .10. National Committee on Uniform Traffic Laws and Ordinances, Traffic Laws Annotated, § 11-902, pp. 254-55 (1979) and § 11-902, pp. 63-64 (1983 Supp.). We cannot conclude that Kansas and at least one-half of the state legislatures in the country have acted arbitrarily, capriciously, or unreasonably in passing these statutes.

(d) Act contained more than one subject

Article 2, § 16 of the Kansas Constitution provides in part that, with certain exceptions, no bill passed by the legislature shall contain more than one subject. Although he did not brief this issue, at oral argument Larson claimed that Senate Bill No. 127 (L. 1985, ch. 48, § 9), which enacted K.S.A. 1986 Supp. 8-1567(a)(1), violated this provision. We disagree. As our supreme court said in rejecting the same attack on another bill, "[A]ll of the revisions to existing statutes and newly enacted provisions contained in the act relate in some way to the comprehensive subject of alcohol and drug-related traffic offenses and prosecution thereof." *State v. Reves*, 233 Kan. 972, 979, 666 P.2d 1190 (1983).

## II. Reasonable Suspicion and Probable Cause

Larson next contends that (a) Trooper Shows did not have a reasonable suspicion of intoxication to justify giving him the field sobriety test and (b) the test given by Trooper Shows failed to provide probable cause for Larson's arrest because Larson had told him that his defective vision would make the tests meaningless.

a. Reasonable suspicion

"Under appropriate circumstances, a police officer may approach and stop a person . . . for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *State v. Boone*, 220 Kan. 758, Syl. ¶ 3, 556 P.2d 864 (1976). The officer " 'must have prior knowledge of facts or observe conduct of a person which causes the officer to

reasonably suspect that such person is committing, has committed, or is about to commit a crime' " 220 Kan. at 763 (quoting *State v. Jackson,* 213 Kan. 219, 225, 515 P.2d 1108 [1973]). When Trooper Shows asked Larson to perform the field sobriety tests, he believed Larson had been speeding. Also, Larson was slurring his words when he spoke and had some trouble locating his driver's license. These factors were sufficient to cause Trooper Shows to reasonably suspect Larson had been driving under the influence.

b. Probable cause to arrest

Larson claims here that whenever a driver tells an officer that he has a physical impairment other than drunkenness which will cause him to fail field sobriety tests, the officer must have the driver perform tests which will not be affected by the impairment. Larson cites no authority for this proposition and we are aware of none. The assertion may be rejected for several reasons. First, the officer should not be required to believe everything a driver tells him or else drivers who *are* drunk might be able to escape detection if they can be inventive enough to avoid the tests. Second, the officer should not be free to devise new tests on the spot to try to avoid the asserted impairment. Such improvising could result in unreliable tests and would encourage discriminatory enforcement of the DUI laws. Finally, drivers who fail field sobriety tests due to impairments other than drunkenness will be protected by the results of the blood or breath testing performed following arrest.

### III. Sufficiency of Evidence

Finally, Larson argues there was no substantial competent evidence to support the district court's conclusion that the breath results were accurate and established Larson's guilt beyond a reasonable doubt.

Larson's argument on this issue seems to be that the fact he allegedly was told the alcohol test was not yet completed after Gonzales said it had been done conclusively establishes that Gonzales either mixed his test up with another or never performed it at all. By finding Larson guilty, the district court found that the test had been performed and performed on Larson's breath sample and not someone else's. Where a court's findings of fact are attacked on appeal, the appellate court need only

determine whether the findings are supported by substantial competent evidence. *Holly Energy, Inc. v. Patrick*, 239 Kan. 528, 537, 722 P.2d 1073 (1986).

Trooper Shows testified he took Larson's breath sample, put it and a form in a box marked with Larson's name, sealed the box, initialed the seal, and took the box to the GC room at patrol headquarters. Gonzales testified he broke open the seals, ran the samples through the testing machine, and then completed the rest of the form Trooper Shows had left in the box. Trooper Shows also testified the results of the test were in his basket when he returned to work on the same day Larson claimed he was told the test had not been done. This testimony is sufficient to support the district court's conclusion the test was completed and the samples tested were of Larson's breath.

Affirmed.