NOT DESIGNATED FOR PUBLICATION

No. 119,249

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ANGELA N. LEIVIAN,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DEBORAH HERNANDEZ MITCHELL, judge. Opinion filed January 11, 2019. Affirmed.

*Roger L. Falk*, of Joseph, Hollander & Craft, L.L.C., of Wichita, for appellant.

*Adam D. King*, of Kansas Department of Revenue, for appellee.

Before HILL, P.J., BUSER, J., and SIDNEY R. THOMAS, District Judge, assigned.

PER CURIAM:  Angela N. Leivian appeals the Sedgwick County District Court's judgment affirming the administrative suspension of her driving privileges for driving under the influence of alcohol (DUI). Leivian claims that the arresting officer lacked reasonable grounds to request a blood test from her and that the officer failed to comply with the statutory implied consent requirements before obtaining her consent for a blood test. Finding no basis for reversal in either of these arguments, we affirm.

1

In affirming the administrative suspension, we note that Leivian also challenged the reliability of the test results at oral argument. But, since the argument was not briefed, we decline to address the argument in this appeal. See *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009) (except for subject matter jurisdiction, issues not presented in an appellate brief are deemed abandoned).

BACKGROUND

On March 3, 2017, Wichita Police Officer Wesley Jensen reported to the scene of a single-car accident on the 9900 block of East Clark Street. The driver, Leivian, had jumped a curb, driven across one grassy area, crossed a driveway, crossed the road (leaving tire marks), again jumped the curb on the other side, crossed another grassy area, and crashed through a metal fence. She stopped when her car had driven into a swimming pool. Jensen deduced that Leivian continued to accelerate after leaving the roadway, estimating that she hit the fence at about 30 mph.

When Jensen spoke to Leivian, she claimed to have swerved to avoid another car approaching her in her lane. She repeated her account multiple times even though Jensen did not prompt her to do so. In questioning Leivian, Jensen thought she acted "a bit off" but initially attributed her behavior to the recent accident. Leivian exhibited slurred speech, poor balance, and glazed eyes. Jensen asked Leivian if she had been drinking, and she initially denied having consumed alcohol. She later admitted having drunk some wine earlier in the day. Jensen did not detect an odor of alcohol, but he was interviewing Leivian in the open air. He learned that Leivian had taken prescription pain-relief and muscle-relaxant medication earlier in the day. But, he did not ask Leivian to perform field sobriety tests because she told him that she lacked sufficient coordination after her back surgery and the air bags in her car had deployed. Jensen did ask Leivian to perform a preliminary breath test (PBT). She agreed and blew a .038. Though a BAT van was

2

available, Jensen did not ask Leivian to perform an evidentiary breath test on the Intoxilyzer 9000.

Nevertheless, because of the single-car accident and her admission to taking prescription medication, Jensen informed Leivian that he needed to take her to a hospital for a blood draw. On the way to the hospital, Jensen detected a faint odor of alcohol in his patrol car. Before having hospital personnel perform a blood draw, Jensen provided Leivian with the implied consent advisory contained within the revised DC-70 form. This form omitted the statutory notice regarding a driver's lack of a constitutional right to refuse testing and the potential criminal consequences for refusing a test. The blood sample was taken approximately two hours and 20 minutes after the accident occurred.

The blood sample was sent to the Central Kansas Regional Forensic Science Center in Wichita. Jensen received a laboratory report on April 12. The report indicated a blood-alcohol concentration (BAC) of .202 with a margin of error of .014. Jensen did not know whether the laboratory tested for drugs as well as alcohol. Jensen completed the DC-27 form and mailed it to Leivian, which triggered the administrative suspension of Leivian's driving privileges. Leivian requested an administrative hearing.

After hearing the evidence presented, the administrative hearing officer affirmed the administrative suspension of Leivian's driving privileges. Leivian filed a petition for review, arguing that Jensen lacked reasonable grounds to request the blood draw and that the hearing officer's determination was not supported by substantial competent evidence. During the hearing before the district court, Leivian also argued that the officer failed to comply with the statutory requirements of implied consent law.

The district court ruled that the officer possessed reasonable grounds to request the blood test. The court also ruled that the DC-70 implied consent advisory provided to Leivian in this case substantially complied with the statutory requirements and followed

3

Kansas Supreme Court precedent. The court therefore affirmed the administrative suspension. The court granted Leivian a stay of execution pending appeal.

REASONABLE GROUNDS TO REQUEST A BLOOD TEST

A law enforcement officer must request a driver to submit to one or more tests of the driver's blood, breath, urine or other bodily substance if two conditions are met. First, the officer must have reasonable grounds to believe that the driver was operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs. K.S.A. 2017 Supp. 8-1001(b); *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 513, 242 P.3d 1179 (2010). Second, the driver must have been arrested for an alcohol-related or drug-related offense. K.S.A. 2017 Supp. 8-1001(b); *Shrader v. Kansas Dept. of Revenue*, 296 Kan. 3, 9, 290 P.3d 549 (2012).

Leivian first challenges the district court's conclusion that Jensen possessed reasonable grounds to request a blood test. Our review of a district court's ruling regarding the existence or absence of reasonable grounds to request DUI testing is typically mixed. We review the district court's findings for substantial competent evidence but exercise plenary review of the ultimate legal conclusion drawn from those facts. See *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 415, 233 P.3d 286 (2010). However, when the pertinent facts supporting the officer's determination of reasonable grounds are not materially disputed, an appellate court exercises unlimited review over the ultimate legal conclusion drawn from those facts. See *McIntosh v. Kansas Dept. of Revenue*, 291 Kan. 41, 43, 237 P.3d 1243 (2010).

Reasonable grounds within the meaning of K.S.A. 2017 Supp. 8-1001(b) is to receive guidance from probable cause standards. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). Probable cause exists when the totality of the

circumstances would lead a reasonable person in the position of the officer to believe that an individual has committed the offense of DUI. *Smith*, 291 Kan. at 514-15.

> "Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Draper v. United States*, 358 U.S. 307, 313, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959).

> "The test for probable cause is not reducible to 'precise definition or quantification.' 'Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision.' All we have required is the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.' [Citations omitted.]" *Florida v. Harris*, 568 U.S. 237, 243-44, 133 S. Ct. 1050, 185 L. Ed. 2d 61 (2013).

Accordingly, to justify a request for an evidentiary breath, blood, or urine test under K.S.A. 2017 Supp. 8-1001(b), a law enforcement officer must possess sufficient information to support a reasonable belief, i.e., a fair probability, that the driver has been operating or attempting to operate a vehicle under the influence of alcohol or drugs.

Leivian had been involved in a single-car accident, traveling a significant distance after leaving the roadway. See *Train v. Kansas Dept. of Revenue*, No. 105,806, 2012 WL 603295, at *4 (Kan. App. 2012) (unpublished opinion) (single-car accident along with other indicators of impairment established reasonable grounds to request a blood test). She appeared unsteady and exhibited slurred speech and glazed eyes. Although the PBT indicated a BAC below legal limits, it indicated that she had some alcohol in her system. She admitted to having taken prescription pain relievers and muscle relaxants. Under these circumstances, a reasonably prudent person in the position of Jensen would have believed that the cause of the accident was driver impairment due to drugs or a combination of drugs and alcohol. See K.S.A. 2017 Supp. 8-1567(a)(5); *State v.Gensler*,

5

308 Kan. 674, 683, 423 P.3d 488 (2018) (comparing K.S.A. 8-1567 with Wichita Municipal Ordinance 11.38.150); *State v. Horton*, No. 104,630, 2011 WL 3276222, at *1-2 (Kan. App. 2011) (unpublished opinion) (finding sufficient evidence to convict of DUI under provision regarding mixed drug and alcohol use even though defendant passed an Intoxilyzer breath test and was asked to submit to a blood test).

Leivian raises innocent explanations for several of the circumstances pointing toward intoxication. Evidence that some other factor besides alcohol or drug impairment are contributing to signs of impairment does not eviscerate an officer's probable cause to believe a driver committed DUI. See *State v. Larson*, 12 Kan. App. 2d 198, 204, 737 P.2d 880 (1987).

Admittedly, the circumstances surrounding the actual testing of Leivian's blood are somewhat strange. Leivian passed the PBT, and although a BAT van was available, Jensen did not ask for an evidentiary breath test. Instead, a forensic examination of Leivaian's blood was requested due to the single-car accident and admission to taking prescription medication. What was received in this case was the alcohol content in her blood. There was no mention of any presence of drugs in the report on the analysis from Leivian's blood. Contrary to Leivian's factual assertions otherwise, however, the record does not indicate that Jensen submitted the blood sample for drug testing only. It simply states that Jensen submitted the blood sample to the laboratory for testing. We need not speculate about the reasons the laboratory report showed only Leivian's blood-alcohol concentration. The results of the blood test are not part of the reasonable grounds to request the blood test analysis because the results were not something a reasonable law enforcement officer would have or could have considered since the results were not available during the relevant time frame.

Under Kansas' Implied Consent Law, K.S.A. 8-1001 et seq., the licensee has the burden to prove by a preponderance of the evidence that the administrative order of

6

suspension should be set aside. K.S.A. 2017 Supp. 8-1020(k). Even though a district court holds an evidentiary hearing when the administrative decision is appealed, the burden remains on the licensee. See K.S.A. 2017 Supp. 8-1020(q) ("[T]he licensee shall have the burden to show that the decision of the agency should be set aside."); *Huelsman v. Kansas Dept. of Revenue*, 267 Kan. 456, 462-63, 980 P.2d 1022 (1999) ("The burden to produce evidence is on the State in the DUI criminal case, whereas the burden is on the licensee in the administrative action and subsequent appeal of that action."); *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 122, 200 P.3d 496 (2009).

Under the totality of the circumstances, Leivian has not demonstrated that the administrative suspension was issued in error because Jensen lacked reasonable grounds to request a blood test.

SUBSTANTIAL COMPLIANCE WITH IMPLIED CONSENT REQUIREMENTS

Leivian also contends that the information within the DC-70 that Jensen provided to her before she submitted to a blood test was fatally defective for omitting part of the statutory notification. The issue was addressed by the administrative hearing officer. Even though Leivian did not specifically challenge this aspect of the administrative decision in her petition for judicial review before the district court, she raised the issue in arguments to the court. The district court addressed the issue on its merits. We conclude the issue was sufficiently preserved for appellate review.

The issue Leivian raises has been addressed at least four times by this court. In each case, this court has consistently concluded that an implied consent advisory based on the revised DC-70—with its omission of certain statutory warnings invalidated by *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017)—constituted substantial compliance with K.S.A. 2017 Supp. 8-1001(k). See *Ackerman v. Kansas Dept. of Revenue*, No. 118,128, 2018 WL 3673168, at *2-3 (Kan.

7

App. 2018) (unpublished opinion), *petition for rev. filed* August 28, 2018; *Bynum v. Kansas Dept. of Revenue*, No. 117,874, 2018 WL 2451808, at *3 (Kan. App. 2018) (unpublished opinion); *State v. Barta*, No. 117,990, 2018 WL 1883878, at *5 (Kan. App. 2018) (unpublished opinion), *rev. granted* 308 Kan. 1596 (2018); *White v. Kansas Dept. of Revenue*, No. 117,956, 2018 WL 1769396, at *6 (Kan. App. 2018) (unpublished opinion), *rev. granted* 308 Kan. 1602 (2018). Though many of these cases are awaiting a ruling on pending petitions for review by the Kansas Supreme Court, the soundness of the reasoning in these cases, as well as the uniformity of the decisions, render these decisions persuasive. We, therefore, adopt the reasoning of these cases.

K.S.A. 2017 Supp. 8-1001(k) requires an arresting officer to provide a driver with nine notices, collectively known as the implied consent advisory, before requesting a driver to submit to a test of the driver's breath, blood, urine, or other bodily substance. K.S.A. 2017 Supp. 8-1001(k)(2) requires the officer to advise the driver that he or she has no constitutional right to refuse consent to the requested test. K.S.A. 2017 Supp. 8-1001(k)(4) requires the officer to advise the driver that a test refusal may subject the driver to criminal penalty. The implied consent advisory—based on the revised DC-70—did not inform Leivian of either of these notices.

The omissions of these notices from the revised DC-70 was intentional based upon the Kansas Supreme Court's rulings in the *Ryce* cases. The Kansas Supreme Court held that a driver has a constitutional right grounded in the Fourth Amendment to the United States Constitution to refuse to submit to the requested test, which undermined the validity of the notice required by K.S.A. 2017 Supp. 8-1001(k)(2). *Ryce*, 303 Kan. at 944. The Kansas Supreme Court also invalidated as unconstitutional K.S.A. 2014 Supp. 8-1025, which criminalized a driver's test refusal. *Ryce*, 303 Kan. at 963-64. Consequently, the notice required by K.S.A. 2014 Supp. 8-1001(k)(4) was essentially invalidated by the *Ryce* cases.

8

The question posed is whether an arresting officer is required to inform drivers of the statutory notices in the statute which the Kansas Supreme Court has invalidated. Leivian seeks to impose a duty of strict compliance with the notice requirements within K.S.A. 2017 Supp. 8-1001(k), but she provides no authority for this duty. The probable reason for the lack of cited authority is controlling authority that sets a different standard. The applicable standard is that an arresting officer is held to a duty of substantial compliance with the notice requirements. *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 (1988) ("[I]t is generally recognized that substantial compliance with statutory notice provisions will usually be sufficient. To substantially comply with the requirements of the statute, a notice must be sufficient to advise the party to whom it is directed of the essentials of the statute.") *City of Overland Park v. Lull*, 51 Kan. App. 2d 588, 591, 349 P.3d 1278 (2015).

The purpose of the implied consent advisory is to inform a driver of the law regarding submission to a requested test and the potential consequences arising from a test failure or test refusal. If the information provided by statute is unconstitutional and unenforceable, the purpose of the implied consent is subverted if the arresting officer provides a driver with notice of those unconstitutional and unenforceable provisions. Accordingly, those notices are no longer part of the "essentials of the statute." Substantial compliance would encompass omission of these nonessential aspects of the statute. See K.S.A. 8-1007 (directing that "if any clause, paragraph, subsection or section of this act shall be held invalid or unconstitutional, it shall be conclusively presumed that the legislature would have enacted the remainder of this act without such invalid or unconstitutional clause, paragraph, subsection or section").

Because Leivian's only contention with notices she received in her DC-70 is that it lacked provisions which have been declared unconstitutional, the DC-70 notices provided to Leivian did substantially comply with the statutory requirements. We find Leivian's argument to the contrary unpersuasive.

CONCLUSION

Because Jensen possessed reasonable grounds to request a blood test of Leivian and the DC-70 provided Leivian substantially complied with the notice requirements of K.S.A. 2017 Supp. 8-1001(k), we affirm the administrative suspension of Leivian's driving privileges.

Affirmed.