(808 P.2d 889)

No. 64,874

RAMON A. GUILLAN, *Plaintiff/Appellant*, v. MELBA N. WATTS, *Defendant*, and ALLSTATE INSURANCE COMPANY, *Intervenor/ Appellee*.

406

Opinion filed April 5, 1991.

*F.G. Manzanares*, of Topeka, for the appellant.

*George F. Farrell, Jr.*, of Topeka, for the appellee.

Before BRISCOE, C.J., BRAZIL, J., and DAVID W. KENNEDY, District Judge, assigned.

BRISCOE, C.J.: Ramon Guillan appeals several rulings in a personal injury action arising from an automobile collision.

On September 25, 1984, a car driven by Guillan was involved in a collision with a car driven by Melba Watts. Guillan was northbound on MacVicar Street in Topeka and, as he attempted to turn left onto 29th Street, his car collided with Watt's car, which was eastbound on 29th. The intersection was controlled by traffic lights and both drivers testified they had the green light. There were no other witnesses. Guillan suffered numerous severe injuries and required extensive medical treatment, claiming medical expenses of over $32,000 and loss of wages of $16,498. On September 9, 1986, Guillan filed suit against Watts for $500,000. On September 17, 1986, Watts filed a counterclaim against Guillan for $50,000.

Watts' insurance policy had a $50,000 limit. When Guillan learned of this policy limit, he notified Allstate, his insurance company, that he would seek compensation under his underinsured motorist coverage, which had a $100,000 limit. Eventually, Watts and her insurance company offered to settle for the $50,000 limit. Guillan informed Allstate of this offer on November 4, 1988. On January 26, 1989, Allstate filed a motion to intervene, which was granted on February 13, 1989. On February 9, 1989, Watts offered to confess judgment in the amount of $105,000. Guillan was willing to accept this if it would be binding on Allstate. Allstate had no objection to the confession as long as it was not bound.

The trial court found Allstate had been given proper notice under K.S.A. 1990 Supp. 40-284(f) of Watts' offer to settle for her policy limits. The court also found that Allstate had not substituted payment within 60 days, as provided in 40-284(f), and had therefore waived its subrogation rights against Watts. The trial court ultimately allowed Watts to confess judgment in the amount of $105,000, but ruled the confession would not be valid and binding upon Allstate. The trial court certified for interlocutory appeal the questions of whether Allstate could intervene later than the 60-day period of 40-284(f) and whether the confession of judgment was binding on Allstate. Application for interlocutory appeal was denied. The case proceeded to trial with only Guillan and Allstate remaining. The jury found Guillan 50 percent at fault and Watts 50 percent at fault, thus awarding no damages.

## I. Did the trial court abuse its discretion in allowing Allstate to intervene?

Guillan contends it was error to allow Allstate to intervene. Whether to grant a motion to intervene is a matter of judicial discretion and depends on the concurrence of three factors: (1) timely application; (2) substantial interest in the subject matter; and (3) lack of representation of the intervenor's interest. *Memorial Hospital Ass'n, Inc. v. Knutson,* 239 Kan. 663, 666, 722 P.2d 1093 (1986).

In *Haas v. Freeman,* 236 Kan. 677, 683, 693 P.2d 1199 (1985), the procedure to be followed in an action involving an underinsured motorist was set forth:

"When the litigant determines the opposing party's liability coverage is below the litigant's liability coverage as well as the amount of damages claimed, and he wishes to invoke the underinsured motorist clause of his insurance policy, he shall notify his insurance carrier in the manner prescribed in the insurance policy.

"The insurance company may then intervene in the case at its election. If it elects to intervene, it shall be a named party to the action. If the insurance company elects not to intervene, K.S.A. 60-454 is applicable. In either case the litigant's underinsured motorist insurance carrier is bound by any judgment obtained in the action."

### K.S.A. 1990 Supp. 40-284(f) provides:

"An underinsured motorist coverage insurer shall have subrogation rights under the provisions of K.S.A. 40-287 and amendments thereto. If a tentative agreement to settle for liability limits has been reached with an underinsured tortfeasor, written notice must be given by certified mail to the underinsured motorist coverage insurer by its insured. Such written notice shall include written documentation of pecuniary losses incurred, including copies of all medical bills and written authorization or a court order to obtain reports from all employers and medical providers. Within 60 days of receipt of this written notice, the underinsured motorist coverage insurer may substitute its payment to the insured for the tentative settlement amount. The underinsured motorist coverage insurer is then subrogated to the insured's right of recovery to the extent of such payment and any settlement under the underinsured motorist coverage. If the underinsured motorist coverage insurer fails to pay the insured the amount of the tentative tort settlement within 60 days, the underinsured motorist coverage insurer has no right of subrogation for any amount paid under the underinsured motorist coverage."

Guillan seems to argue that, under *Haas*, once notice is given, the insurance company must immediately intervene. To find that *Haas* requires immediate intervention would require an extremely narrow and illogical construction. Guillan further argues that, once notice has been given under 40-284(f), intervention must come within 60 days. However, 40-284(f) only concerns the subrogation rights of the underinsured motorist insurance carrier. *Gifford v. Farm Bur. Mut. Ins. Co.*, 14 Kan. App. 2d 740, 742, 799 P.2d 105, *rev. denied* 248 Kan. 995 (1990). The statute only refers to the underinsured motorist insurance carrier losing subrogation rights if no timely substitution of payment occurs. It does not require the underinsured motorist insurance carrier to intervene within 60 days should it choose to contest the liability of the underinsured motorist. Allstate agrees in this case that it has waived its subrogation rights because it did not substitute

payment within 60 days. The trial court did not err in allowing Allstate to intervene to contest liability.

## II. Is the tortfeasor's confession of judgment binding upon Allstate?

Guillan contends the trial court erred in ruling Allstate was not bound by Watts' confession of judgment. Guillan seizes on one sentence found in *Haas* for support of his proposition. In *Haas*, the court held the underinsured motorist insurance carrier could choose whether to intervene. The court went on to state: "In either case the litigant's underinsured motorist insurance carrier is bound by any judgment obtained in the action." 236 Kan. at 683. Guillan argues this language is broad enough to include a confession of judgment.

Guillan's argument presents a legal question of first impression that requires judicial interpretation of K.S.A. 1990 Supp. 40-284(b), which provides:

"(b) Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death *to which the insured is legally entitled from the owner or operator of another motor vehicle* with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle." (Emphasis added.)

The issue in the present case is whether the phrase "to which the insured is legally entitled from the owner or operator of another motor vehicle" imposes on an injured insured the burden of establishing the liability of the underinsured motorist by judicial determination as a prerequisite to recovery from his underinsured motorist insurance carrier. In other words, is a confession of judgment from the primary tortfeasor sufficient to obligate payment by the insurer or is the injured insured still required to judicially establish liability before recovery can be had?

In cases involving uninsured motorist coverage, the Kansas Supreme Court has construed the phrase "legally entitled to recover as damages" (K.S.A. 1990 Supp. 40-284[a]) to mean that the insured must establish the fault of the uninsured motorist as a prerequisite to recovery from the uninsured motorist insurance carrier. *Patrons Mutual Ins. Ass'n v. Norwood*, 231 Kan. 709,

713, 647 P.2d 1335 (1982); *Winner v. Ratzlaff*, 211 Kan. 59, 64, 505 P.2d 606 (1973). In a direct action against the insurer, a joint action against the insurer and the tortfeasor, or an action against the tortfeasor alone, the insured has the burden of proving the tortfeasor is uninsured and is legally liable for the damage, and the amount of this liability. *Winner*, 211 Kan. at 64-65. The court has held that the uninsured motorist statute, 40-284, was not intended to impose absolute liability without regard to fault. Rather, it was intended to provide compensation only after the liability of the uninsured motorist for the injury has been established. *Sturdy v. Allied Mutual Ins. Co.*, 203 Kan. 783, 785, 457 P.2d 34 (1969). The same should be true in an underinsured motorist situation.

As a general rule, a judgment entered by consent or agreement is conclusive only on the parties to the agreement, and is not binding upon other persons even if such other persons would be bound by the judgment had it been entered as a result of a trial. See *Industrial Park Corp. v. U.S.I.F. Palo Verde Corp.*, 26 Ariz. App. 204, 206-07, 547 P.2d 56 (1976); *Hentschel v. Smith*, 278 Minn. 86, 91, 153 N.W.2d 199 (1967). In Kansas, the general rule has been applied in comparative negligence cases in a variety of contexts, and the Supreme Court has consistently found one tortfeasor cannot, by settlement, bind nonsettling tortfeasors without their consent. See, *e.g.*, *Ellis v. Union Pacific R.R. Co.*, 231 Kan. 182, 192, 643 P.2d 158, *aff'd on rehearing* 232 Kan. 194, 653 P.2d 816 (1982) ("[A] settling defendant has no claim to settle but his own.") Although the present case does not involve settlement in a multiple tortfeasor context, the analogy to the general rule is persuasive.

In *Mathis v. TG&Y*, 242 Kan. 789, 751 P.2d 136 (1988), the plaintiff filed successive suits arising out of the same event, naming different defendants in each petition. The plaintiff then settled with the defendants in one suit and the action was dismissed with prejudice. The issue presented was whether a dismissal with prejudice in one case precludes a trial in the other action. It was held the dismissal did not qualify as a "judicial determination of comparative fault" precluding a trial on the merits against different defendants based on the same occurrence. 242 Kan. at 794.

In *Childs v. Williams*, 243 Kan. 441, 757 P.2d 302 (1988), the minor plaintiff settled with one defendant and, pursuant to K.S.A. 38-102, settlement was reduced to judgment with court approval. Later, plaintiff filed an action against another defendant. The issue presented was whether the judgment previously obtained precluded a trial on the merits in the second action. Defendant attempted to distinguish *Mathis*, arguing the court played a substantive role in evaluating the settlement and reducing it to judgment whereas *Mathis* dealt only with dismissal by the court. The Supreme Court was not persuaded and concluded "each plaintiff must be allowed a trial judicially determining comparative fault, regardless of whether the plaintiff had the opportunity to do so earlier in one action." 243 Kan. at 443. Implicitly, the court held a judgment rendered pursuant to agreement by the parties was not a judicial determination of comparative fault precluding a trial on the merits.

In the present case, Guillan argues a confession of judgment by Watts bars further litigation of the matter. It is difficult to uphold this position in view of the fact that to do so would contravene the established right of the parties to a judicial determination of fault. The confession of judgment is fundamentally indistinguishable from the judgment in *Childs*. Each was a settlement agreed to by less than all of the actors, which required court approval only because of the posture of the case. In neither case was the plaintiff required to establish liability on the part of the consenting tortfeasor to obtain the judgment and in neither case was a determination of comparative fault made as a result of the judgment. The confession of judgment in the present case is insufficient to satisfy Guillan's burden of proving he "is legally entitled" under 40-284(b) to recover as damages the underinsured motorist coverage from his insurer.

It is unfortunate the court in *Haas* chose to state the insurer "is bound by any judgment obtained in the action" without first defining "any judgment." 236 Kan.. at 683. However, within the context of that case, the statement is accurate. *Haas* arose out of the following set of facts: Haas filed suit against Freeman, and Horace Mann Insurance Company was joined as a party defendant. The insurance company was dismissed by the trial court on its motion, but the court ruled the insurance company would be

bound by any judgment rendered. Haas appealed that ruling, arguing he had a right to include the insurance company in the action. The Supreme Court disagreed, finding, in an underinsured motorist action, the insurer may intervene or not at its own peril. The court assumed there would be a judicial determination of fault in these situations and that there would always be an "active opposing party and his insurer" forcing such a determination. 236 Kan. at 682. The central issue resolved in *Haas* was the effect of prior case law regarding uninsured motorist coverage on the relatively new underinsured motorist statute. The central issue was not the effect of a settlement between the plaintiff and the primary tortfeasor on the rights of the underinsured motorist insurance carrier. Guillan's reliance on one statement lifted from the *Haas* decision is not persuasive and his position on the matter is not a correct statement of the law. The trial court did not err in finding Allstate was not bound by the confession of judgment.

### III. Did the court err in instructing the jury?

Guillan also contends the trial court erred in not instructing the jury that it was unlawful to drive faster than 35 mph at the location of the collision.

"It is the duty of the trial court to properly instruct the jury upon the theory of the case. Errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. Instructions in any particular action are to be considered together and read as a whole, and where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be disregarded as harmless. If the instructions are substantially correct, and the jury could not reasonably be misled by them, the instructions will be approved on appeal. [Citation omitted.]" *Trout v. Koss Constr. Co.*, 240 Kan. 86, 88-89, 727 P.2d 450 (1986).

"In a case involving a vehicle, the trial court has a duty to instruct the jury on the applicable traffic statutes. [Citation omitted.] A party is entitled to an instruction explaining his theory of the case where there is evidence to support it. [Citation omitted.] However, refusing to give an instruction is not error when its substance is adequately covered in other instructions. [Citation omitted.] A court should not by its instructions unduly emphasize one aspect of a case. [Citation omitted.]" *Schallenberger v. Rudd*, 244 Kan. 230, 232, 767 P.2d 841 (1989).

Two experts testified that Watts' car was traveling between 40 and 45 mph at the time of the accident. The speed limit on 29th

Street was 35 mph. Part of Guillan's theory was that Watts was negligent by violating the speed limit.

Guillan requested that PIK Civ. 2d 8.01 concerning violation of law as negligence and PIK Civ. 2d 8.12 concerning speed limits be given. The trial court gave PIK Civ. 2d 8.01 and PIK Civ. 2d 8.12(a). PIK Civ. 2d 8.12(a) states: "The laws of Kansas provide that no person shall drive a vehicle at a speed greater than is reasonable under the conditions and hazards then existing." Guillan objected to the court not giving PIK Civ. 2d 8.12(b), which states: "At the time and place and with the vehicle involved in this case, any speed in excess of [35] miles per hour was unlawful." The trial court declined to give this instruction, stating it was a matter of common knowledge.

Clearly, there was evidence to support Guillan's negligence per se argument and the court should have given the instruction. The instructions given by the court did not adequately cover this theory. The instructions read as a whole do not fairly instruct the jury on the law governing the case. In addition, because this is a close case, the potential prejudice to Guillan is increased. In this case, the jury split fault evenly at 50 percent. An instruction that any speed in excess of 35 mph was unlawful would strengthen Guillan's case and increase the likelihood of a verdict in Guillan's favor. We cannot conclude the trial court's failure to give the instruction was harmless error.

### IV. Is K.S.A. 8-1545(a)(2) unconstitutionally vague and indefinite?

Guillan contends that K.S.A. 8-1545(a)(2), upon which PIK Civ. 2d 8.22 is based, is unconstitutionally vague and indefinite. The trial court gave PIK Civ. 2d 8.22 in this case.

" 'In determining whether a statute is void for vagueness, two inquiries are appropriate: (1) whether the statute gives fair warning to those persons potentially subject to it, and (2) whether the statute adequately guards against arbitrary and discriminatory enforcement.' " *State v. Larson*, 12 Kan. App. 2d 198, 201-02, 737 P.2d 880 (1987) (quoting *State v. Robinson*, 239 Kan. 269, 273, 718 P.2d 1313 [1986]).

" ' "[An appellate] court adheres to the proposition that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of

its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done." ' " *Federal Land Bank of Wichita v. Bott,* 240 Kan. 624, 628-29, 732 P.2d 710 (1987).

K.S.A. 8-1545(a)(2) states:

> "*Left turns.* The driver of a vehicle intending to turn left shall approach the turn in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle. Whenever practicable a left turn at an intersection shall be made to the left of the center of the intersection, and any left turn shall be made so as to leave the intersection or other location in the extreme left-hand lane lawfully available to traffic moving in the same direction as such vehicle on the roadway being entered."

Obviously, the statute is not a model of clarity. The second sentence beginning "Whenever practicable" is not particularly clear. This language is taken from Uniform Vehicle Code § 11-601(b) and is intended to facilitate the use of an intersection by left-turning cars coming from opposite directions and to provide a practical turning course for both large and small vehicles.

Although the statute is not well written, it does give fair warning to those subject to it. The statute directs drivers from which lane to begin the turn and from which lane to exit the intersection. It also directs drivers to turn left of the center of the intersection when practicable. Although this leaves it to the driver to determine when it is practicable, this does not render the statute unconstitutionally vague.

As we are reversing on other grounds, we need not address Guillan's final issue concerning statements made by Allstate's counsel during closing arguments.

Affirmed in part, reversed in part, and remanded for a new trial.