No. 64,874

Ramon A. Guillan, *Plaintiff-Appellant,* v. Melba N. Watts, *Defendant,* and Allstate Insurance Company, *Intervenor-Appellee.*

(822 P.2d 582)

Opinion filed December 6, 1991.

*F. G. Manzanares*, of Topeka, argued the cause and was on the brief for appellant.

*George F. Farrell, Jr.*, of Topeka, argued the cause and was on the brief for intervenor-appellee.

*Gerald W. Scott*, of Wichita, was on the brief for *amicus curiae* Kansas Trial Lawyers Association.

The opinion of the court was delivered by

LOCKETT, J.: The plaintiff, Ramon Guillan, brought an action for injuries he received when the automobile he was driving collided with an automobile driven by the defendant, Melba Watts. When plaintiff discovered the defendant was underinsured, he notified his insurance carrier, Allstate Insurance Company. Plaintiff also notified his insurer after the defendant offered to settle her liability for her policy limits. Plaintiff's insurer intervened but did not substitute payment within 60 days, waiving its subrogation rights against the defendant under K.S.A. 1990

Supp. 40-284(f). The district court allowed the defendant to confess judgment for $105,000 but ruled the defendant's confession of judgment was not binding on plaintiff's insurer.

Because the defendant's confession of judgment was not binding on the plaintiff's insurer, it was necessary to apportion fault between the parties. The matter was tried to a jury. The jury found each party 50% at fault and no damages were awarded. The plaintiff appealed, claiming that the district court improperly (1) allowed Allstate to intervene in the action, (2) found Allstate was not bound by Watts' confession of judgment, and (3) failed to instruct the jury that it was unlawful to drive faster than 35 mph at the location of the collision. Plaintiff also claimed that K.S.A. 8-1545(a)(2), upon which one of the jury instructions was based, is unconstitutionally vague and indefinite. The Court of Appeals found the trial court (1) properly allowed Allstate to intervene in the action, (2) correctly determined Allstate was not bound by Watts' confession of judgment, and (3) committed reversible error in failing to instruct the jury that it was unlawful to drive faster than 35 mph at the location of the collision. The Court of Appeals also determined that K.S.A. 8-1545(a)(2) is not unconstitutionally vague and indefinite. 15 Kan. App. 2d 405, 808 P.2d 889 (1991). Guillan and Allstate both petitioned for review. Both petitions were granted. Neither petition seeks review of the Court of Appeals' affirmance of Allstate's being allowed to intervene.

Guillan first contends both courts erred in ruling Allstate was not bound by Watts' confession of judgment. Guillan's claim required the Court of Appeals to interpret K.S.A. 1990 Supp. 40-284(b), which provides:

"Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death *to which the insured is legally entitled from the owner or operator of another motor vehicle* with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle." (Emphasis added.)

The issue is, after the plaintiff's insurer intervened in the action, was the confession of judgment by the underinsured tortfeasor sufficient to obligate the intervening insurer to pay the under-

insured motorist benefit to its insured or is the injured insured required to judicially establish the underinsured tortfeasor's liability before the insured can recover that benefit from his insurer?

When analyzing this question, the Court of Appeals relied on our prior cases which discuss uninsured motorist coverage and noted in those cases this court has construed the phrase "legally entitled to recover as damages" (K.S.A. 1990 Supp. 40-284[a]) to mean that the insured must establish the fault of the uninsured motorist as a prerequisite to recovery from the uninsured motorist insurance carrier. *Patrons Mutual Ins. Ass'n v. Norwood*, 231 Kan. 709, 713, 647 P.2d 1335 (1982); *Winner v. Ratzlaff*, 211 Kan. 59, 64, 505 P.2d 606 (1973).

We have stated that, in a direct action against the insurer, a joint action against the insurer and the tortfeasor, or an action against the tortfeasor alone, the insured has the burden of proving the tortfeasor is uninsured and is legally liable for the damage and proving the amount of this liability. *Winner*, 211 Kan. at 64-65. The *Winner* court held that the uninsured motorist statute, 40-284, was not intended to impose absolute liability without regard to fault. Rather, the statute was intended to provide compensation only after the liability of the uninsured motorist has been established. *Sturdy v. Allied Mutual Ins. Co.*, 203 Kan. 783, 785, 457 P.2d 34 (1969). After review of the uninsured motorist cases, the Court of Appeals concluded the same must be true in an underinsured motorist case.

The Court of Appeals observed that, as a general rule, a judgment entered by consent or agreement is conclusive only on the parties to the agreement and is not binding upon other parties even if such other parties would be bound by the judgment had it been entered as a result of a trial. It noted that in Kansas the general rule has been applied in comparative negligence cases in a variety of contexts by this court, and it has consistently been found one tortfeasor cannot, by settlement, bind nonsettling tortfeasors without their consent. See, *e.g.*, *Ellis v. Union Pacific R.R. Co.*, 231 Kan. 182, 192, 643 P.2d 158 ("[A] settling defendant has no claim to settle but his own."), *aff'd on rehearing* 232 Kan. 194, 653 P.2d 816 (1982). The Court of Appeals reasoned, although the present case does not involve settlement in a mul-

tiple tortfeasor context, the analogy to the general rule is persuasive.

In reaching this decision, the Court of Appeals relied on two of our prior cases which dealt with the legislature's adoption of K.S.A. 1990 Supp. 60-258a: *Mathis v. TG&Y*, 242 Kan. 789, 751 P.2d 136 (1988), and *Childs v. Williams*, 243 Kan. 441, 757 P.2d 302 (1988). That statute imposes individual liability for damages based on the proportionate fault of all parties to the occurrence that gives rise to the injuries and damages, even though one or more parties cannot be joined formally as a litigant or be held legally responsible for his or her proportionate fault. In adopting comparative negligence, the intent of the legislature was to fully and finally litigate in a single action all causes of actions and claims for damages arising out of any act of negligence, but it was never the legislature's intent or the intent of the courts to place form over substance and preclude a plaintiff from proceeding against a tortfeasor when there has been no judicial determination of comparative fault.

In *Mathis v. TG&Y*, 242 Kan. 789, the plaintiff filed successive suits arising out of the same event, naming different defendants in each petition. The plaintiff then settled with the defendants in one suit and the action was dismissed with prejudice. The issue was whether a dismissal with prejudice in one case precludes a trial in the other action. It was held the dismissal did not qualify as a "judicial determination of comparative fault" precluding a trial on the merits against different defendants based on the same occurrence. 242 Kan. at 794.

In *Childs v. Williams*, 243 Kan. 441, the minor plaintiff settled with one defendant. Because K.S.A. 38-102 allows a minor to disavow a contract within a reasonable time after reaching majority, settlement was reduced to judgment with court approval to make the settlement binding. Later, plaintiff filed this action against another defendant. The issue presented was whether the judgment previously obtained precluded a trial on the merits in the second action. The defendant attempted to distinguish *Mathis*, arguing the court played a substantive role in evaluating the settlement and reducing it to judgment, whereas *Mathis* dealt only with dismissal by the court. This court was not persuaded and concluded "each plaintiff must be allowed a trial judicially

determining comparative fault, regardless of whether the plaintiff had the opportunity to do so earlier in one action." 243 Kan. at 443. Implicitly, the court held a judgment rendered to insure a minor did not later disavow a settlement contract was not a judicial determination of comparative fault precluding a trial on the merits.

The Court of Appeals noted in each case there was a settlement agreed to by less than all of the actors, which required court approval only because of the posture of the case. In neither *Mathis* nor *Childs* was the plaintiff required to establish liability on the part of the consenting tortfeasor to obtain the judgment and in neither case was a determination of comparative fault made as a result of a trial.

The Court of Appeals then discussed Guillan's contention that a confession of judgment by Watts bars further litigation of the matter. It observed that to do what Guillan requests would contravene the established right of the parties to a judicial determination of fault. It concluded that Watts' confession of judgment in this action is fundamentally indistinguishable from the judgment in *Childs*.

The Court of Appeals reasoned the central issue resolved in *Haas v. Freeman*, 236 Kan. 677, 693 P.2d 1199 (1985), was the effect of prior case law regarding uninsured motorist coverage on the relatively new underinsured motorist statute, rather than the effect of a settlement between the plaintiff and the primary tortfeasor on the rights of the underinsured motorist insurance carrier. It determined that Guillan's reliance on one statement in *Haas* was not persuasive and his position on the matter was not a correct statement of the law. It found the confession of judgment in the present case insufficient to satisfy Guillan's burden of proving he "is legally entitled" under 40-284(b) to recover as damages the underinsured motorist benefit from his insurer. It ruled that the trial court did not err in finding Allstate was not bound by the confession of judgment. See *Ramsey v. Chism*, 249 Kan. 299, 817 P.2d 198 (1991), filed subsequent to the Court of Appeals opinion in this case, where we determined that the insured cannot require the insurer to be a party in the action and recognized the possibility of multiple litigation.

After reaching its decision, the Court of Appeals stated:

"It is unfortunate the court in *Haas* chose to state the insurer 'is bound by any judgment obtained in the action' without first defining 'any judgment.' 236 Kan. at 683. However, within the context of that case, the statement is accurate. *Haas* arose out of the following set of facts: Haas filed suit against Freeman, and Horace Mann Insurance Company was joined as a party defendant. The insurance company was dismissed by the trial court on its motion, but the court ruled the insurance company would be bound by any judgment rendered. Haas appealed that ruling, arguing he had a right to include the insurance company in the action. The Supreme Court disagreed, finding, in an underinsured motorist action, the insurer may intervene or not at its own peril. The court assumed there would be a judicial determination of fault in these situations and that there would always be an 'active opposing party and his insurer' forcing such a determination. 236 Kan. at 682." 15 Kan. App. 2d at 411-12.

Three federal courts have reached the opposite conclusion when the insurer refused to intervene in the action. In *Horace Mann Ins. Co. v. Ammerman*, 630 F. Supp. 114 (D. Kan. 1986), a declaratory judgment action, the plaintiff, Horace Mann Ins. Co. (Horace Mann), had issued an automobile insurance policy to Lee Dean Ammerman. The policy included underinsured motorist coverage with policy limits of $250,000 per person or $500,000 per occurrence. On November 17, 1983, Mr. Ammerman was in a fatal two-car accident. The driver of the other car, Robinette Chadwick, was insured through the Allstate Insurance Company. Her auto liability insurance policy limit was $50,000.

On March 29, 1984, defendant Gloria Ammerman (Ammerman's widow) signed a release. In accordance with the terms of the release, Allstate Insurance Company paid to defendants the $50,000 provided for in Mrs. Chadwick's insurance policy. On February 11, 1985, defendants filed suit in the District Court of Johnson County, Kansas, against Mrs. Chadwick, alleging that her negligence caused the death of Mr. Ammerman. Mrs. Chadwick confessed judgment in that action. On March 20, 1985, the state court entered judgment in favor of defendants and against Mrs. Chadwick in the amount of $200,000. Although properly notified of that state court proceeding, Horace Mann chose not to intervene.

Horace Mann then filed a declaratory judgment action in the federal district court, claiming that the release executed by Mrs. Ammerman without its written consent violated the terms of Mr.

Ammerman's underinsured motorist policy; therefore the policy was void. Defendants counterclaimed, requesting the $200,0000 due them under that policy—the difference between the $250,000 per person policy limit and the $50,000 already received from Allstate Insurance Company. The defendants argued that the relief plaintiff sought was foreclosed by the insurer's failure to intervene in the state court action against Mrs. Chadwick filed by those insured under plaintiff's policy. As authority for this argument, defendants cited our decision in *Haas v. Freeman*, 236 Kan. 677, 693 P.2d 1199 (1985). The federal district court found especially pertinent our language in *Haas*:

" 'We reiterate our previous conclusions in *Winner [v. Ratzlaff*, 211 Kan. 59, 505 P.2d 606 (1973),] that all issues in a lawsuit should be tried in one trial. Multiplicity of suits does not promote substantial justice. Thus, the issues in cases involving uninsured motorists and underinsured motorists should be tried in one lawsuit.' 236 Kan. at 682, 693 P.2d at 1203." 630 F. Supp. at 116-17.

The federal district court noted, contrary to the implication of defendants' argument, *Haas* did not establish a rule of mandatory intervention in a case such as this. 630 F. Supp. at 117.

The federal district court observed that Horace Mann had exercised its right *not* to intervene in the state court action. By electing not to intervene, Horace Mann was bound by the state court's subsequent determination that defendants had suffered damages of $200,000 and that Mrs. Chadwick was liable therefor. It then noted, however, the question at issue in the declaratory judgment action, *i.e.*, whether plaintiff is liable to defendants, was not even addressed in the state court action.

The federal court observed that the "Kansas public policy requiring compensation to innocent persons injured by the tortious conduct of an [underinsured] motorist *would* be violated if an insurer were allowed to refuse payment on an underinsured motorist policy even after its insured had established the liability of the underinsured motorist." 630 F. Supp. at 119. It noted that is the result plaintiff sought. The federal district court determined that the underinsured motorist insurer was not required to intervene in the insured's action against a third party in state court and its failure to do so did not establish its liability to the insured, but, by electing not to do so, it became bound by the state

court's determination as to the amount of damages suffered by the insured.

*National Farmers Union Ins. Co. v. Novak*, 85-2148-S (D. Kan. May 7, 1986), was a case in which Robert G. Pearson was killed and Robert Christopher Pearson, Joseph A. Miller, and Johnny J. Novak sustained serious, permanent, and disabling injuries as the result of a collision that occurred on September 8, 1984. The negligent driver was underinsured. Midwestern Indemnity, which insured the defendant vehicle owner, had a provision in its policy which stated:

"We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the underinsured motor vehicle.

"We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements." Slip op. at 4.

An action was filed in the federal district court. After Midwestern was made a party to the action, it elected to withdraw. The court approved a journal entry allocating damages to the heirs of Robert G. Pearson in the amount of $2,000,000; to Robert Christopher Pearson, $40,000; to Johnny J. Novak, $80,000, and to Joseph A. Miller, $80,000. The journal entry indicated that the total disbursement of all interpleaded funds resulted in partial satisfaction of their respective claims.

The defendants filed their motions for summary judgment, claiming unsatisfied underinsured damages. The federal district court cited *Haas v. Freeman* and stated:

"The *Haas* case clarifies that a litigant's underinsured motorist insurance carrier need not be a named party to the action in order to be bound by any judgment obtained therein. Notice of the action pursuant to the terms of the policy is all that is required for the carrier to be bound by 'any judgment.'

"Midwestern argues that *Haas* is inapplicable here because it pertains to a situation where judgment was obtained by trial. In the instant case, the claimants reached a settlement determined by the court, therefore Midwestern argues it is not a judgment which is judicially settled." Slip op. at 5.

The court did not agree that *Haas* was distinguishable solely because the case at bar involved a settlement agreement. It noted

that Midwestern was aware of the pendency of the action, yet elected to withdraw. It stated that the judgment in the case was no less a judgment because a trial by jury or by court did not occur. In a hearing, evidence was presented by the parties with respect to their damages, and the court specifically approved such damages. Because of the status of the case, there would have been no benefit gained by proceeding to trial on what would essentially amount to uncontested claims.

In *Pearson v. Midwestern Indemnity Company*, Nos. 86-2021 and 85-2148-S (10th Cir. April 5, 1988), Midwestern Indemnity Company appealed the federal district court's summary judgment in *National Farmers Union*, which concluded appellant was bound by the terms of the settlement agreement entered into by its insured.

Midwestern argued the issue of damages was not judicially determined or actually litigated, and therefore, the agreement was not binding. The 10th Circuit observed that the district court's execution of the journal entry on February 24, 1986, indicated its approval of the parties' resolution of the various claims, including the designation of the insured's damages. The circuit court noted it is well established that a judgment entered based on a settlement agreement is a judgment on the merits, citing *Brooks v. Barbour Energy Corp.*, 804 F.2d 1144, 1146 (10th Cir. 1986). Slip op. at 6.

The circuit court noted that from the beginning Midwestern had been given proper notice of the lawsuit and had full knowledge of the nature of the proceedings. In fact, Midwestern participated in the actual settlement negotiations by defending Johnny Novak on one of the cross-claims. Instead of intervening to contest the damages issue, Midwestern withdrew from the case until after the issues of liability and damages were resolved through settlement and approved by the court. The circuit court determined Midwestern's failure to act, when given the opportunity, precluded it from now demanding a second opportunity to contest the damages issue. It found that, based on these facts, and pursuant to *Haas*, Midwestern was bound by the district court's order of February 24, 1986, and the determination of damages stated therein. Slip op. at 6-7.

As a general rule, multiple litigation is never desirable, and there is a public interest economically in avoiding it whenever possible. In an action involving an underinsured motorist, if the insured invokes the underinsured motorist clause of his automobile insurance policy and notifies his insurance carrier in the manner prescribed in the insurance policy, the insurer has the election to intervene in the action. If the insurer elects to intervene, it becomes a named party to the action. *Haas,* 236 Kan. at 682-83. However, if the tortfeasor subsequently agrees to confess judgment after the insurer has intervened, the confession or agreement is conclusive only as to the parties to the agreement and is not binding upon the insurer even though the insurer would have been bound by the judgment had it been obtained as a result of the trial. See *Industrial Park Corp. v. U.S.I.F. Palo Verde Corp.,* 26 Ariz. App. 204, 206-07, 547 P.2d 56 (1976). See, *e.g., Ellis v. Union Pacific R.R. Co.,* 231 Kan. 182, 192, 643 P.2d 158, *aff'd on rehearing* 232 Kan. 194, 653 P.2d 816 (1982).

Here, when Guillan discovered that Watts was underinsured, Guillan notified his insurance company. Guillan's insurance carrier, Allstate, elected to intervene and became a named party to the action. Watts was allowed to confess judgment in favor of Guillan. Allstate, a party to the action, was not bound by the agreement between the insured and the tortfeasor. Under these facts there must be a trial to apportion the fault between Guillan and Watts to determine if Guillan's damages exceed the limits of Watts' automobile liability insurance limits.

We disagree with the Court of Appeals' further statement that in all underinsured motorist actions there must be a judicial determination of fault between the parties in order to bind the insurance carrier. A judgment entered based on a settlement agreement is a judgment on the merits. *Brooks v. Barbour Energy Corp.,* 804 F.2d at 1146. Once notified of an action, if the insurance carrier elects not to intervene, the insurance carrier is bound by a judgment obtained in the action.

The Kansas public policy, that all issues in a lawsuit should be tried in one trial and that compensation to innocent persons injured by the negligent conduct of an underinsured motorist is required would be violated if an insurer that refused to intervene

in the action was allowed to refuse payment on an underinsured motorist policy after its insured had established the liability of the underinsured motorist whether by a trial of that issue or a proper confession of judgment in the action. Once the insured has notified his insurer and the insurer elects not to intervene and become a party to the action, the insurer is bound by the judgment, whether the judgment is by trial or based on a proper settlement agreement between the parties to the action and approved by the court.

The next issue is whether the trial court erred in not instructing the jury that it was unlawful to drive faster than 35 mph at the location of the collision. It is the duty of the trial court to properly instruct the jury upon the theory of the case. Errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. Instructions in any particular action are to be considered together and read as a whole, and where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be disregarded as harmless. If the instructions are substantially correct, and the jury could not reasonably be misled by them, the instructions will be approved on appeal. *Trout v. Koss Constr. Co.*, 240 Kan. 86, 88-89, 727 P.2d 450 (1986). In a case involving a vehicle, the trial court has a duty to instruct the jury on the applicable traffic statutes. A party is entitled to an instruction explaining its theory of the case where there is evidence to support it. However, refusing to give an instruction is not error when its substance is adequately covered in other instructions. A court should not by its instructions unduly emphasize one aspect of a case. *Schallenberger v. Rudd*, 244 Kan. 230, 232, 767 P.2d 841 (1989).

Two experts testified that Watts' car was traveling between 40 and 45 mph at the time of the accident. The speed limit was 35 mph. Part of Guillan's theory was that Watts was negligent by exceeding the speed limit.

Guillan requested that PIK Civ. 2d 8.01 concerning violation of law as negligence and PIK Civ. 2d 8.12 concerning speed limits be given. The trial court gave PIK Civ. 2d 8.01 and PIK Civ. 2d 8.12(a). PIK Civ. 2d 8.12(a) states: "The laws of Kansas provide that no person shall drive a vehicle at a speed greater than is reasonable under the conditions and hazards then exist-

ing." Guillan objected to the court not giving PIK Civ. 2d 8.12(b), which states: "At the time and place and with the vehicle involved in this case, any speed in excess of [35] miles per hour was unlawful." The trial court declined to give this instruction, stating it was a matter of common knowledge.

We agree with the Court of Appeals that there was evidence to support Guillan's negligence per se argument and that the court should have given the instruction. The instructions given did not adequately cover this theory. Here, the instructions read as a whole do not fairly instruct the jury on the law governing the case. In addition, because this is a close case, the potential prejudice to Guillan is increased. In this case, the jury split fault evenly at 50 percent. An instruction that any speed in excess of 35 mph was unlawful would strengthen Guillan's case and increase the likelihood of a verdict in Guillan's favor.

The Court of Appeals could not conclude the trial court's failure to give the instruction was harmless error. We agree.

Guillan's last contention is that K.S.A. 8-1545(a)(2) is unconstitutionally vague and indefinite.

An appellate court adheres to the proposition that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. *Federal Land Bank of Wichita v. Bott*, 240 Kan. 624, 628-29, 732 P.2d 710 (1987).

In determining whether a statute is void for vagueness, two inquiries are appropriate: (1) whether the statute gives fair warning to those persons potentially subject to it, and (2) whether the statute adequately guards against arbitrary and discriminatory enforcement. *State v. Robinson*, 239 Kan. 269, 273, 718 P.2d 1313 (1986). K.S.A. 8-1545(a)(2) is not void for vagueness.

The trial court gave a PIK Civ. 2d 8.22 instruction. That instruction is based on K.S.A. 8-1545(a)(2), which states:

"*Left turns.* The driver of a vehicle intending to turn left shall approach the turn in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle. Whenever practicable a left turn

at an intersection shall be made to the left of the center of the intersection, and any left turn shall be made so as to leave the intersection or other location in the extreme left-hand lane lawfully available to traffic moving in the same direction as such vehicle on the roadway being entered."

The Court of Appeals noted this language is taken from Uniform Vehicle Code § 11-601(b) and is intended to facilitate the use of an intersection by left-turning cars coming from opposite directions and to provide a practical turning course for both large and small vehicles. It observed that although the statute is not well written, it does give fair warning to those subject to it. The statute directs drivers from which lane to begin the turn and from which lane to exit the intersection. The Court of Appeals stated the statute also directs drivers to turn left of the center of the intersection when practicable. The Court of Appeals found although the statute requires the driver to determine when it is practicable this does not render the statute unconstitutionally vague. We agree.

The decision of the Court of Appeals affirming in part and reversing in part the decision of the district court is affirmed as modified, and the case is remanded for a new trial.