**Donna M. DAVIS, Plaintiff,**

v.

**PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Defendant.**

**Civil Action No. 95–4190–DES.**

United States District Court,
D. Kansas.

April 30, 1997.

Edward G. Collister, Jr., Collister & Kampschroeder, Lawrence, KS, Gordon M. Penny, Lawrence, KS, for plaintiff.

Paul P. Hasty, Jr., Wallace, Saunders, Austin, Brown & Enochs, Chtd., Overland Park, KS, for defendant.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on plaintiff's Motion for Summary Judgment (Doc. 20) and defendant's Motion for Summary Judgment (Doc. 14). For the reasons set forth below, plaintiff's motion is granted and defendant's motion is denied as moot.

## I. BACKGROUND

Donna Davis, formerly known as Donna Warren, was injured in an automobile collision on August 3, 1990. Robert Bryant drove the vehicle that collided with Ms. Davis's vehicle. Mr. Bryant was insured, but with minimum coverage. Ms. Davis was insured by Prudential Property and Casualty Insurance Company ("Prudential"). Prudential paid $11,947.17 in personal injury protection ("PIP") benefits to Ms. Davis as a result of the accident.

On July 21, 1992, Ms. Davis filed a petition in the District Court of Douglas County, Kansas, against Mr. Bryant alleging that as a result of Mr. Bryant's negligence, she was injured in an automobile collision. The case was assigned to Judge Michael J. Malone. Shortly after filing suit, Ms. Davis's attorney provided notice of the suit and a copy of the Petition to Prudential. On July 31, 1993, Prudential filed a subrogation lien in the tort action between Davis and Bryant and informed Ms. Davis's counsel that there was no need for Prudential to intervene in the lawsuit.

Following discovery and settlement negotiations, Davis and Bryant reached a tentative settlement agreement in the spring of 1993. On May 21, 1993, counsel for Ms. Davis mailed a certified letter to Dan Berg, a representative of Prudential Insurance, with whom Ms. Davis's counsel had earlier corresponded. The certified mail return indicates

the letter was received May 24, 1993. The letter advised Prudential of the terms of the tentative settlement agreement, to-wit: that Mr. Bryant would confess judgment in the amount of $120,000.00 and his insurance carrier would pay into court its policy limits of $25,000. The letter also invited Prudential to respond, pursuant to Kan. Stat. Ann. § 40–284(f), at its option. On May 26, 1993, a copy of the same letter was mailed to Michael Schenk, the attorney who had filed the PIP subrogation lien earlier in the litigation.

Attorneys for Davis and Bryant prepared a proposed order incorporating the settlement agreement and sent it to Judge Malone pending a hearing on outstanding motions. Judge Malone mistakenly signed the order and filed it May 27. However, none of the parties were aware of this premature filing until on or after August 25, 1993.

On June 17, 1993, Judge Malone held a conference call between counsel for Ms. Davis, counsel for Mr. Bryant, and Kevin Bennett, counsel for Prudential. The result of the call was that matters set on June 17, 1993, were continued for hearing until August 25, 1993. On June 18, 1993, counsel for Mr. Bryant and Prudential were notified that Ms. Davis's motion to approve the settlement and confession of judgment, and motion to pay $25,000.00 settlement proceeds to Davis (asserting settlement proceeds were not duplicative of PIP payments) would also be heard by Judge Malone on August 25, 1995.

On the afternoon of July 23, 1993, the sixtieth day following receipt of the certified letter advising Prudential of the tentative settlement agreement, Prudential delivered to Ms. Davis's attorney a check in the amount of $25,000.00 made jointly payable to Donna Warren and Prudential Casualty and Insurance Company. Ms. Davis's attorney concluded that such a tender did not comply with the statutory requirements of substitution by the insurance carrier and, on the next business day, he returned the check to Prudential's attorney at his office in Overland Park, Kansas. Prudential also filed a motion to intervene in the litigation between Davis and Bryant on July 23, 1993. Attached to Prudential's motion was a proposed answer denying liability and damage.

The trial court conducted a motions hearing on August 25, 1993, at which all parties, including Prudential, were repreorder resolving the contested issues in Ms. Davis's favor, and denying Prudential's motion to intervene as untimely made. Prudential appealed the trial court's decision, but the Kansas Court of Appeals affirmed the lower court's decision and the Kansas Supreme Court denied a petition for review.

## II. SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552–53.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d

538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

## III. DISCUSSION

Ms. Davis bases her summary judgment motion on the terms of the insurance policy under which Prudential agreed to pay her underinsured motorist claims. The gist of Ms. Davis's position appears to be that Prudential has no legal reason not to remit the amount due her under the insurance contract. In response, Prudential simply reiterates those arguments anticipated by Ms. Davis as potential obstacles to her recovery. Prudential does not advance any additional theory which would prevent Ms. Davis from collecting under the policy. Nor does Prudential suggest the existence of any genuine issue of material fact. The court must there-

fore examine the merits of the arguments raised to determine if any one of them would, as a matter of law, bar Ms. Davis from recovering according to the terms of the insurance policy. Only if none of these arguments has merit would summary judgment be appropriate.

■ Ms. Davis initially contends that Prudential waived its right to challenge the judgment rendered in the District Court of Douglas County, Kansas, by not timely intervening in that state court action. Prudential contends otherwise. According to Prudential, it is not bound by the judgment against Mr. Bryant because Judge Malone denied its motion to intervene.

Kan. Stat. Ann. § 60–224(a) provides that an underinsured motorist insurer may intervene as a matter of right where its application is timely, it has a substantial interest in the subject matter of the litigation, and its interests are not being adequately represented. *Rawlins v. Stanley,* 207 Kan. 564, 486 P.2d 840 (1971); *see Frey, Inc. v. City of Wichita,* 11 Kan.App.2d 116, 715 P.2d 417 (1986). Judge Malone, by memorandum filed December 7, 1993, denied Prudential's motion to intervene. He found that Prudential's application to intervene was not timely and that Prudential lacked interest in the subject matter of the litigation because the judgment was not duplicative of PIP payments. Thereafter, the Kansas Court of Appeals affirmed Judge Malone's decision and the Kansas Supreme Court denied Prudential's request for review.

Although Prudential contends that it was denied the opportunity to intervene "through no fault of its own," the propriety of the state court decisions is not properly in issue here. The question for this court instead concerns the effect of the state court decisions. In *Guillan v. Watts,* 249 Kan. 606, 822 P.2d 582 (1991), the Kansas Supreme Court held that an insurance carrier that voluntarily declines to intervene is bound by a judgment obtained in the action between its insured and a tort defendant. *Id.* 822 P.2d at 590. This is true, the *Guillan* court held, "whether the judg-

ment is by trial or based on a proper settlement agreement between the parties to the action and approved by the court." *Id.* In the present case, Prudential's motion to intervene was denied by the trial court as untimely. The question, then, is whether the effect of Prudential's failure to timely intervene is tantamount to the effect of voluntarily declining to intervene.

The court finds no authority compelling a distinction between the legal effect of voluntarily declining to intervene in an action from that of untimely attempting to intervene. Indeed, the court seriously doubts waiting to file a known claim after the applicable statute of limitations has run is, after all, no different than voluntarily declining to file. Likewise, a prospective party's untimely application to intervene in an action is the same as voluntarily declining to intervene. In either case the legal effect is that the prospective party has waived the right to intervene.

Prudential had notice and opportunity to intervene in the state court action. It chose to delay to the point where it was no longer in compliance with the statutory requirement of timely application. In so choosing, Prudential exposed itself to a "distinct and real hazard" that it might be required to provide coverage to Ms. Davis for any resulting judgment rendered by the state court. *Rawlins,* 486 P.2d at 840. Allowing Prudential to challenge the state court judgment because of its tactical miscalculation would undermine the Kansas public policy that "all issues in a lawsuit should be tried in one trial and that compensation to innocent persons injured by the negligent conduct of an underinsured motorist is required." *Guillan,* 822 P.2d at 590. Accordingly, by electing to delay until its application to intervene became untimely, Prudential became bound by the resulting state court judgment.

■ Ms. Davis also contends that Prudential forfeited its right to subrogation by not complying with the applicable Kansas statute. Kan. Stat. Ann. § 40–284(f) provides that an underinsured motorist coverage insurer shall have subrogation rights against any person who may be liable for the tort committed against the insured. However, if a tentative agreement to settle for liability limits has been reached between the insured and the underinsured tortfeasor, the carrier has sixty days from notice of such tentative agreement to substitute its payment to the insured for the tentative settlement amount. *Id.* Failure to do so forfeits the insurer's subrogation right for any amount paid under the underinsured motorist coverage. *Id.*

Prudential argues that Ms. Davis prevented it from exercising its right to substitute payment for the tentative settlement amount by having the settlement approved three days after Prudential received notice. Prudential points out that Ms. Davis and Mr. Bryant entered into an agreement shortly after it received notice on May 24, 1993, and that Judge Malone approved the agreement and entered judgment on May 27, 1993. In effect, Prudential argues, it had only three days, rather than the statutorily allowed sixty days, to substitute its payment to Ms. Davis.

Prudential's argument appears convincing at first blush. However, the court finds it unpersuasive upon closer inspection. Although Judge Malone did in fact enter the May 27 judgment, Prudential fails to articulate how it was misled by the entry of that order. It is uncontested that Prudential was unaware of the order until at least August 25, 1993—long after the statutorily allowed sixty days had expired. Judge Malone's May 27 judgment, therefore, would not have affected Prudential's decision regarding its rights under Kan. Stat. Ann. § 40–284(f). Moreover, Prudential's attempt to substitute on the last day allowed by statute, and its failure to contest the May 27 order until well after the statutory deadline, are both inconsistent with its claim that its right to substitute payment was frustrated.

■ Ms. Davis further contends that, although Prudential acted within the sixty day substitution limit, it did not properly substitute its payment for the settlement amount. Specifically, Ms. Davis contends that because

Prudential made its check jointly payable, it failed to comply with the substitution requirement and forfeited its right to subrogation. Prudential argues that it had a right to tender the check made jointly payable to protect its interest in the PIP benefits, which Prudential maintains are duplicative of the settlement agreement and subject to the subrogation lien it filed. According to Prudential, it should not be penalized for what it contends was "compliance with the statute and its good faith belief that it is entitled to a substantial portion of the proceeds of the check that it tendered to its insured."

The court disagrees with Prudential's argument. In the first place, Prudential's belief that it was entitled to a substantial portion of the proceeds of the check is misplaced. As previously mentioned, the Kansas Court of Appeals affirmed Judge Malone's ruling that the judgment was not duplicative of PIP payments. Prudential also fails to provide the court with any authority to support its view that it was in compliance with the statute. The statute expressly states that the insurer must "substitute its payment for the settlement amount" in order to protect its subrogation rights. "If the underinsured motorist coverage insurer fails to pay the insured the amount of the tentative tort settlement within 60 days, the underinsured motorist coverage insurer has no right of subrogation for any amount paid under the underinsured motorist coverage." Kan. Stat. Ann. § 40–284(f). In this case, Prudential did not tender "the amount of the tentative tort settlement" as the statute clearly seems to require. Without authority to the contrary, the court must agree with Ms. Davis's argument that Prudential forfeited its subrogation right by not complying with Kan. Stat. Ann. § 40–284(f).

For her final argument, Ms. Davis contends that the "consent to settle" clause contained in the policy is invalid because it is inconsistent with Kan. Stat. Ann. § 40–284(f). Prudential suggests that consent to settle clauses are valid in Kansas and that Ms. Davis's failure to abide by a similar clause contained in the insurance policy renders the settlement agreement with Mr. Bryant unenforceable. The court, however, finds no need to address the validity of consent to settle clauses in this case. Regardless of their validity, Prudential's position would not change. Ms. Davis complied with Kan. Stat. Ann. § 40–284(f) by supplying notice to Prudential of the tentative settlement agreement with Mr. Bryant, thus triggering the sixty day period for substitution. Although Prudential responded on the last day allowed by the statute, it did not substitute payment as required and lost its right to subrogation. Ms. Davis's failure to comply with the consent to settle clause, assuming for argument's sake that such clauses are valid in Kansas, does not change the fact that Prudential forfeited its right to subrogation by its own action.

**IS THEREFORE BY THE COURT OR-DERED** that plaintiff's Motion for Summary Judgment (Doc. 20) is granted. The Clerk of the Court shall enter judgment for the plaintiff and against the defendant in the amount of Seventy–Five Thousand Dollars ($75,000) [1] plus post-judgment interest pursuant to 28 U.S.C. § 1961 until the amount is paid. With regard to attorney's fees, the parties are directed to comply with D. Kan. Rule 54.2.

**IT IS FURTHER ORDERED** that defendant's Motion for Summary Judgment (Doc. 14) is denied as moot.

---

1. This amount represents the difference between Ms. Davis's underinsured motorist coverage of $100,000 and the $25,000 payment she received from Mr. Bryant.