(21 P.3d 1007)
No. 84,327

RONNY JACKSON, *Appellant/Cross-appellee*, v. GERALD E. THOMAS, d/b/a WICHITA SOLVENT COMPANY, and ARROWHEAD MARKETING, *Appellees/Cross-appellants*.

Opinion filed March 30, 2001.

*James T. McIntyre*, of Law Offices of James T. McIntyre, Chartered, of Wichita, for the appellant/cross-appellee.

*Alvin D. Herrington*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for the appellees/cross-appellants.

Before PIERRON, P.J., LEWIS, J., and BUCHELE, S.J.

LEWIS, J.: This is a products liability action in which the plaintiff, Ronny Jackson, alleges that he was damaged by a solvent that was sold by defendants Gerald E. Thomas, d/b/a Wichita Solvent Company (WSC), and Arrowhead Marketing to his employer. Summary judgment was granted to defendants, and Jackson appeals.

Jackson had worked on automobile transmissions for many years and used a solvent to clean the automobile parts. The solvent he used was purchased by his employer from Thomas, doing business as WSC.

In February 1995, a rash developed on Jackson's arms. On March 6, 1995, Jackson went to see his family physician concerning the rash. The doctor apparently told him that he had dermatitis,

which was solvent induced. The initial recommendation of the physician was that Jackson protect his skin with Vaseline before beginning work; he later recommended that Jackson wear surgical gloves at work. Jackson admits he knew after this visit that the rash was solvent induced but for some reason waited for 2 years and 12 days before filing the action.

WSC was a small, unincorporated operation owned by Thomas. It purchased solvent manufactured by a refinery at a wholesale price and resold the solvent to various buyers, including Jackson's employer, at a retail price. Arrowhead Marketing was the company which found the refinery for WSC that offered the lowest priced solvent. WSC receives the solvent from the refinery in bulk and delivers it to its customers in a quantity requested. WSC does not and did not at any time alter, modify, or test the solvent it purchased from refineries. The record indicates that during February and March 1995, Jackson's employer was using a solvent purchased from WSC.

Prior to Jackson's development of dermatitis, WSC changed its solvent supplier from Texaco to either Arcadia or Kerr-McGee. Prior to this change in solvents, Jackson had used solvent purchased by his employer from WSC without developing dermatitis for 18 years.

The principal evidence in this case was given by an expert retained by Jackson, who stated in a report that the solvent used prior to the change was a 140-degree flash point solvent. The new solvent has a flash point of 100 degrees. The old solvent had a xylene content of 580 parts per million, whereas the new solvent had a xylene content of 2,000 parts per million. Despite the increase in xylene content, Jackson offered no evidence that a xylene content of 2,000 parts per million was unacceptably or dangerously high.

Jackson's petition alleged that the solvent was defective due to an unacceptably high xylene content. This was the theory on which Jackson attempted to establish liability. Despite this claim, there is no evidence which indicated that either WSC or Arrowhead Manufacturing had any knowledge that the solvent it sold contained unacceptably high xylene content. Jackson contends WSC was neg-

ligent and breached implied warranties as well as a breach of warranty for a particular purpose.

In granting summary judgment to defendants, the trial court determined that any judgment against the manufacturer of the solvent would be reasonably certain of being satisfied.

The trial court granted summary judgment before discovery was totally complete. It stated that the uncontroverted statements of fact established all of the elements within K.S.A. 60-3306, the sellers' immunity provision of the Kansas Product Liability Act. As a result, the trial court concluded that WSC had complete immunity under the statute and was entitled to judgment as a matter of law.

Our standard of review on an issue of summary judgment is well known:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

"Ordinarily, summary judgment should not be granted when discovery is incomplete." *Bank IV Wichita v. Arn, Mullins, Unruh, Kuhn & Wilson*, 250 Kan. 490, 498, 827 P.2d 758 (1992). Despite this general rule, if the facts pertinent to the material issues are not controverted, summary judgment may be appropriate even though discovery has not been completed. See *Parker v. Farmway Credit Union*, 11 Kan. App. 2d 223, 227, 718 P.2d 643, *rev. denied* 239 Kan. 694 (1986).

### K.S.A. 60-3302(c) states:

" 'Product liability claim' includes any claim or action brought for harm caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product. It includes, but is not limited to, any action based on, strict liability in tort, negligence, breach of express or implied warranty, breach of, or failure to, discharge a duty to warn or instruct,

whether negligent or innocent, misrepresentation, concealment or nondisclosure, whether negligent or innocent, or under any other substantive legal theory."

We note that Jackson's claims of negligence, breach of implied warranties, and failure to warn are all product liability claims as defined by the statute. In addition, the defendants were in the business of selling solvent, and they fall under the definition of "product seller." K.S.A. 60-3302(a) defines product seller as "any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or consumption. The term includes a manufacturer, wholesaler, distributor or retailer of the relevant product." The Kansas Product Liability Act is, as a result, controlling over the claims involved in this action.

The principal issue we must determine on appeal is whether the defendants were immune under K.S.A. 60-3306. K.S.A. 60-3306 provides immunity to product sellers if the conditions of the statute are met. It states that a product seller shall not be subject to liability in a claim arising from alleged defects in the product if the product seller can establish:

"(a) Such seller had no knowledge of the defect;

"(b) such seller in the performance of any duties the seller performed, or was required to perform, could not have discovered the defect while exercising reasonable care;

"(c) the seller was not a manufacturer of the defective product or product component;

"(d) the manufacturer of the defective product or product component is subject to service of process either under the laws of the state of Kansas or the domicile of the person making the product liability claim; and

"(e) any judgment against the manufacturer obtained by the person making the product liability claim would be reasonably certain of being satisfied."

The trial court found that all five of the requirements of 60-3306 were uncontroverted facts and, as a result, granted summary judgment to the defendants. It was uncontroverted that the defendants had no knowledge that the solvent was defective because of a high xylene content, nor could WSC have discovered the defect while exercising reasonable care in the performance of any duties that it performed or was required to perform. The only way to determine the amount of xylene in a solvent under these facts would be to

perform certain tests. WSC received the solvent in bulk and delivered it to the end users in smaller quantities but also in bulk. Arrowhead Marketing never had physical possession of the solvent. The record shows that neither defendant could have discovered a high xylene content. Neither WSC nor Arrowhead Marketing were manufacturers of the solvent. The manufacturers of the solvent were both subject to service of process in the state of Kansas, and the trial court concluded that any judgment Jackson may have obtained against the manufacturers would be reasonably certain of having been satisfied.

It appears to us that the legislature has decided to shift the product liability responsibility to the manufacturer of the product under the circumstances shown in this case. In other words, when the seller of the product in question was not the manufacturer and could not have discovered the defect in the product, it is immune from liability when the manufacturer of that product can be served in Kansas and when any judgment against the manufacturer would be reasonably certain of being satisfied. All of those requirements are satisfied in the uncontroverted facts in this case, and we agree with the trial court's conclusion that the defendants in this case were immune from liability under the provisions of K.S.A. 60-3306.

Jackson argues that the defendants had access to the manufacturer's safety data sheets and that those sheets prohibited the use for which the defendants sold the solvent. He further argued that Thomas knew that the employees of the transmission repair shop regularly inhaled and had prolonged skin exposure to the solvents he sold as they cleaned the automobile parts.

Jackson argues that WSC did not prove it had no knowledge of the defect. He suggests that the defect was not inherent in the solvent itself but was created by the seller in the manner it was used and that the seller knew that the use of the solvent for cleaning automobile parts would cause damage to individuals. Accordingly, he argues he should be able to recover under K.S.A. 84-2-315, which outlines an implied warranty of fitness for a particular purpose. The problem with Jackson's argument is that WSC did not sell the solvent to Jackson's employer for a particular purpose. "Particular purpose" means an unusual, nonordinary purpose.

K.S.A. 84-2-315, Kansas Comment, 1996 ¶ 3; see *International Petroleum Services, Inc. v. S & N Well Service, Inc.*, 230 Kan. 452, 461, 639 P.2d 29 (1982). WSC sold the solvent to clean automobile parts. Under the facts shown, this use would be the solvent's ordinary purpose, and K.S.A. 84-2-315 is inapplicable when chemicals are used for their ordinary purpose. *Carson v. Chevron Chemical Co.*, 6 Kan. App. 2d 776, 787, 635 P.2d 1248 (1981).

When the summary judgment motion was filed, it was Jackson's duty to come forward with some evidence to establish disputed issues of material fact which had legal controlling force as to the controlling issue. He failed to do so. The record shows that Jackson admitted that the defendants had no knowledge of the defect but that the negligence came in the selection of the solvent.

We conclude that the record shows that the defendants were immune pursuant to the provisions of K.S.A. 60-3306, and we affirm the trial court's decision granting summary judgment to the defendants.

The defendants have suggested that Jackson's claim was not timely filed and is barred by virtue of the statute of limitations. See K.S.A. 2000 Supp. 60-513. Although we do not agree with the defendants' arguments, we conclude that this issue is moot by virtue of the fact that we have determined that the defendants were immune from liability. Accordingly, we do not reach the statute of limitations issue.

Affirmed.