(61 P.3d 86)
No. 88,194

MED JAMES, INC., *Appellant*, v. DONALD BARNES, d/b/a ECKBERG INSURANCE AGENCY, *Appellee*.

Opinion filed January 10, 2003.

*J. Franklin Hummer*, of Med James, Inc., of Shawnee Mission, for the appellant.

*Lee M. Smithyman* and *Constance L. Shidler*, of Smithyman & Zakoura, Chartered, of Overland Park, for the appellee.c

Before PIERRON, P.J., LEWIS, J., and BUCHELE, S.J.

PIERRON, J.: This case involves an action seeking recovery of money damages that Med James, Inc. (Med James) claims to have lost as a result of Donald Barnes, d/b/a Ekberg Insurance Agency, failing to properly prepare an insurance application. Med James appeals the district court's award of summary judgment in favor of Barnes. Med James contends its action is not barred by the 2-year statute of limitations, that the district court should not have considered Barnes' motion for summary judgment due to deficiencies in procedural compliance, that Med James' action was not barred by the "one-trial" rule, and that the district court incorrectly found that a principal had to be without fault in order to recover in an implied indemnity case against an agent.

Guaranty National Insurance Company (Guaranty) is a Colorado insurance corporation authorized to do business in Kansas. Med James is Guaranty's general agent in Kansas. Donald Barnes is the owner of the Ekberg Insurance Agency (Ekberg) in Kansas City. Barnes is an independent insurance agent and writes for six or seven insurance companies, including Guaranty.

On April 11, 1997, Theodoro Hernandez, Sandra Simental's boyfriend, purchased a 1989 Ford Escort. Simental is listed on the bill of sale as the purchaser. The Escort was titled and registered in Simental's name. It is undisputed that Theodoro gave the Escort to Angel Hernandez, his brother, but the actual date of the transfer is contested. Simental first testified Theodoro gave the Escort to Angel 2 or 3 days after she bought it. However, when examined by the court, Simental testified Theodoro gave the Escort to Angel after she had applied for insurance.

On April 15, 1997, Simental applied for insurance on the Escort at Ekberg. Simental's spoken English is extremely limited. Felicia Ortega, who speaks and reads both English and Spanish, accom-

panied Simental to Ekberg. Barnes testified that except for one time when Simental came in to make a payment, she always had someone with her as an interpreter to inform Barnes what she desired. However, at trial, Barnes testified that while Simental brought someone with her, she spoke to him in English.

At Ekberg, Simental completed an application from Guaranty for automobile insurance on the Escort. The "APPLICANT STATEMENT" portion of the application asks five questions used by Guaranty to determine insurability: (1) Have all individuals residing in your household, 15 years old and older, been disclosed on this application? (2) Are all vehicles in the household listed on this application? (3) Have all accidents and violations within the last 3 years by all drivers been listed on the application? (4) Are any vehicles used for delivery purposes, such as business/commercial, newspaper or pizza delivery? and (5) Have all possible drivers, even those who may operate your vehicle on an irregular or infrequent basis, been listed on this application?

Barnes testified he filled out Simental's application in his own hand and gave the completed application for her to review, and she signed it without making any changes. Barnes testified that he asked Simental the five questions on the application and he recorded her answers of "yes" on questions 1, 2, 3, and 5, and "no" on question 4. Immediately under the five questions there is a line stating: "Applicant to initial after completing _____." Barnes testified that when the applicant initials the blank, Guaranty knows the applicant has reviewed the information and verifies that it is correct. On Simental's application, the line does not contain her initials but is blank. Barnes said he does not normally ask applicants to initial the blank.

Contrary to Barnes' testimony, Simental testified that he did not ask her any questions. She testified through an interpreter that the only information Barnes asked for was her driver's license. Simental testified she was unable to read the application except for her signature.

Guaranty received Simental's application and ordered her driving record. On April 11, 1997, Guaranty received a copy of Simental's driving record indicating her license was on administrative

suspension for failure to present evidence of liability insurance coverage. On April 23, 1997, Guaranty issued a statement of liability insurance coverage effective for 1 year from April 15, 1997, certifying that it had issued Simental a motor vehicle liability policy.

Guaranty issued a policy for Simental on the Escort, but informed Ekberg that the monthly premium would be increased from $67 to $74 because of the information on her driving record. On May 16, 1997, Simental went to Ekberg and paid $74 cash on the premium for insurance coverage from May 10, 1997, through June 16, 1997.

On May 23, 1997, Theodoro bought an Acura Legend for Simental from Cool Tint. The Acura broke down and was returned to the dealership that day. The same day, Theodoro purchased a 1989 Nissan Maxima for Simental from Cool Tint. The bill of sale for the Nissan lists Simental and Angel as the buyers of the car. Simental testified Theodoro bought the Nissan because Simental, Theodoro, and Gilberto Ortiz were going to Colorado for a wedding and Theodoro's car was in the shop being fixed.

The same day of the purchase, May 23, 1997, Simental went to Ekberg to obtain insurance on the Nissan. Simental told Barnes she wanted to add two vehicles to her existing policy. Barnes issued identification cards providing proof of insurance for the Acura and the Nissan and added endorsements to the existing policy for liability only on the two additional vehicles. Simental paid an additional $80 cash on the premium for coverage during the period of May 23, 1997, through June 16, 1997.

On May 24, 1997, the 1989 Nissan was involved in a fatal head-on collision in Colorado while being driven by Theodoro, who was killed. Oritz, as well as the driver of the other car involved, were also killed in the accident.

In June 1997, Melanie Belz, a personal lines manager for Med James, conducted an investigation of the accident and Simental's application. Belz made the decision to rescind the Simental policy based on a failure to disclose other potential operators who lived in the household. On August 11, 1997, Belz sent Simental a rescission letter, written in English, informing her Guaranty was claiming its policy was void ab initio.

Five days before the rescission letter, on August 6, 1997, Guaranty filed a petition for declaratory judgment alleging that on April 15, 1997, Simental submitted an application for insurance containing materially false information in violation of the Kansas Fraudulent Insurance Act, K.S.A. 40-2,118 *et seq*. Guaranty argued Simental's fraudulent acts relieved Guaranty of any obligation to provide coverage or pay any claims.

The trial court conducted a 2-day trial and then took the matter under advisement. The court denied Guaranty's requested remedy and granted judgment in favor of Simental. The court found Simental had a valid and enforceable insurance policy with Guaranty. The court believed Simental's testimony in finding that Barnes did not ask her the pertinent questions on the insurance application and, therefore, Guaranty failed in its burden of proving she acted knowingly and with intent to defraud in signing the application. The court concluded Barnes was Guaranty's agent in placing the insurance, and it could not benefit from his actions in providing incorrect information.

We affirmed the trial court's ruling in favor of Simental in *Guaranty Nat'l Ins. Co. v. Simental*, Nos. 85,220 and 85,404, unpublished opinion filed June 1, 2001. We found the verdict was supported by substantial competent evidence; that Guaranty had not established fraud on the part of Simental; that Guaranty's estoppel issue was of no concern; that Guaranty, based on its previous statements, was prohibited from arguing that Barnes was an independent insurance agent acting as Simental's agent; and that the amount of attorney fees was reasonable.

After the trial court entered its ruling, but before we entered our decision in *Guaranty Nat'l Ins. Co.*, Med James filed the case at bar. Med James claimed it was entitled to 100% indemnification from Barnes due to his failure to ask the material questions and supply material and accurate answers on Simental's insurance application, and that Barnes negligently completed the insurance application and breached his fiduciary duty by failing to properly complete the insurance application.

Barnes moved for summary judgment on Med James' petition. The district court granted summary judgment to Barnes, finding

that Med James' claims were barred by the 2-year statute of limitations for actions involving negligence, comparative implied indemnity, and breach of fiduciary duty. The court also found that the "one-trial rule" prohibited Med James' lawsuit, that Med James was collaterally estopped from asserting that Barnes was Simental's agent, and that Med James was guilty of negligence such that its claim of implied indemnity from the one causing the loss was barred by that negligence.

The standard of review for cases decided on summary judgment is well established:

" 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000) (quoting *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 [1999]).

This matter involves a number of issues for us to resolve.

First, Med James argues the district court should have denied Barnes' motion for summary judgment based on procedural defects. The basis for the argument on appeal is that the district court erred in accepting documents from another judicial district that were never "authenticated" pursuant to K.S.A. 2001 Supp. 60-465 and allowing uncontroverted facts to be supported by improper authority in the summary judgment motion in violation of Supreme Court Rule 141 (2002 Kan. Ct. R. Annot. 189). Med James contends the lawyer's affidavit vouching for the authenticity of the judicial documents was an improper substitute for the clerk's statutory authentication.

Barnes filed a summary judgment motion on April 30, 2001. Med James objected to Barnes' motion, arguing he failed to comply

with K.S.A. 2001 Supp. 60-256 and Supreme Court Rule 141 by not providing authority for his uncontroverted facts in the form of references to pleadings, depositions, answers to interrogatories and the like. The district court agreed with Med James that Barnes had failed to properly authenticate records from the Wyandotte County District Court. The court ordered the parties to either agree to waive the authentication or have Barnes properly authenticate the records. Barnes resubmitted his summary judgment motion, incorporating his first motion and using affidavits of an attorney and of Barnes for authentication of the Wyandotte County court documents. In response, Med James submitted an affidavit of an attorney previously involved in the case.

The district court found the affidavits of the two attorneys, which stated the pleadings of the Wyandotte County court file were true and accurate, provided a sufficient basis for the court to consider them as part of the record in support of the motion for summary judgment. The court concluded the affidavits provided "substantial compliance" with K.S.A. 60-256 and Supreme Court Rule 141. The court also decided the authentication imperfections would not hinder a summary judgment ruling, "particularly in view of the fact that plaintiff's response does not place any of the 23 facts alleged in support of defendant's motion for summary judgment in dispute."

We agree with the district court's exercise of discretion in this ruling.

K.S.A. 2001 Supp. 60-465 sets forth the requirements for authenticating copies of an official record:

"A writing purporting to be a copy of any official record or of an entry therein, meets the requirements of authentication if the judge finds that the writing purports to be published by authority of the nation, state or subdivision thereof, in which the record is kept or evidence has been introduced sufficient to warrant a finding that the writing is a correct copy of the record or entry."

K.S.A. 2001 Supp. 60-465 continues by listing situations where extrinsic evidence of authenticity is not required, none of which were used in this case.

Barnes clearly has the burden of proof as the party requesting summary judgment. Barnes must show there is no genuine issue

as to any material fact and that he is entitled to judgment as a matter of law. See *Schultz v. Schwartz*, 28 Kan. App. 2d 84, 88, 11 P.3d 530 (2000). Med James is not without a burden of proof in the summary judgment proceedings. A party opposing a motion for summary judgment must come forward with evidence to establish a dispute as to a material fact. *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131, 955 P.2d 1189 (1998) (citing *Glenn v. Fleming*, 247 Kan. 296, 305, 799 P.2d 79 [1990]; *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 531, 739 P.2d 444 [1987]).

The better practice in this case would have been to have the clerk of the Wyandotte County court certify the documents as copies of the official court file. Barnes' counsel should have taken the necessary steps to provide this type of authentication. However, we realize we are dealing with copies of official court documents of an adjacent Kansas district court for a case related to the case at bar. Med James does not challenge the authenticity of the Wyandotte County court documents, only the procedure followed to authenticate the records.

We find the district court did not err in deciding the evidence submitted by Barnes was sufficient to warrant a finding that the documents were a correct copy of the Wyandotte County court records. We do note the trial court could have required the statutory process, and that too would have been within its discretion if there was any doubt as to authenticity.

Med James next argues the district court should not have granted summary judgment since discovery was not completed. Summary judgment is generally improper when discovery is incomplete. *Bell v. Kansas City, Kansas, Housing Authority*, 268 Kan. 208, 220, 992 P.2d 1233 (1999). However, if the facts pertinent to the material issues are not controverted, summary judgment may be appropriate even when discovery is unfinished. *Jackson v. Thomas*, 28 Kan. App. 2d 734, 736, 21 P.3d 1007, *rev. denied* 271 Kan. 1036 (2001). Med James does not indicate any facts that controvert the material facts in this case or how additional discovery would lead to uncovering these facts. The trial court was correct in its ruling.

Next, Med James argues the district court erred in granting summary judgment for Barnes on all of the negligence claims against

him, based upon the one-trial rule. Med James contends the declaratory judgment action seeking to void an insurance contract on the ground of fraud is not tantamount to allegations of personal injury, property damage, or death under the comparative fault statute, K.S.A. 60-258a, to trigger the one-trial rule.

The district court below granted summary judgment under the one-trial rule using the following analysis:

"The plaintiff in the Wyandotte County case [Guaranty National] could clearly have joined Barnes as a party in that action by filing a third party action against him on Simental's and Ortiz's counterclaims against it. It chose not to do so. Rather, as a matter of trial strategy, it chose to make Barnes its ally in the struggle to disavow liability by claiming that the insurance contract should be voided ab initio. Its trial strategy in that case was to claim, through the testimony of Barnes, that Simental was asked the questions about her driving record and the number of drivers living in her household and gave untruthful information. That strategy backfired rather badly. Nevertheless, the fact that Guaranty National and Med James suffered a loss in that case does not warrant Med James' filing this subsequent law suit, now alleging just the opposite: i.e., that Barnes was the one at fault for failing to ask Simental the questions."

Interestingly, there appears to be little precedent on the applicability of our one-trial rule to a declaratory judgment action on the coverage of an insurance contract and the underlying controversy for which coverage is sought.

Our Supreme Court addressed the newly enacted comparative fault statutes and the one-trial rule in *Eurich v. Alkire*, 224 Kan. 236, 237-38, 579 P.2d 1207 (1978):

"Looking to the historical background of the enactment, the circumstances attending its passage, and the purpose to be accomplished by the act, as is required when construing any legislative act (*Brown v. Keill*, supra), we believe it was the intent of the legislature to fully and finally litigate all causes of action and claims for damage arising out of any act of negligence subject to K.S.A. 60-258a. The provision for determining the percentage of causal negligence against each person involved in a negligence action contemplates that the rights and liabilities of each person should be determined in one action. Because all issues of liability are determined in one action there can be no reasonable argument that the issues should be relitigated. Likewise, there is no reasonable argument for the proposition that a claim for damage arising out of one collision or occurrence should not be presented at the time negligence is originally determined."

In *Guillan v. Watts*, 249 Kan. 606, 822 P.2d 582 (1991), the court explained that the legislature in adopting comparative negligence intended the parties to

"fully and finally litigate in a single action all causes of actions and claims for damages arising out of any act of negligence, but it was never the legislature's intent or the intent of the courts to place form over substance and preclude a plaintiff from proceeding against a tortfeasor when there has been no judicial determination of comparative fault." 249 Kan. at 610.

*Guillan* reiterated Kansas public policy that all issues in a lawsuit should be tried in one trial. 249 Kan. at 616.

The court in *Winner v. Ratzlaff*, 211 Kan. 59, 65, 505 P.2d 606 (1973), stated that "[m]ultiple litigation is never desirable." Moreover, our Supreme Court in *Haas v. Freeman*, 236 Kan. 677, 682, 693 P.2d 1199 (1985), stated that "all issues in a lawsuit should be tried in one trial." See Scott, *Uninsured/Underinsured Motorist Insurance: A Sleeping Giant*, 63 J.K.B.A. 28, 36-37 (May 1994); *Albertson v. Volkswagenwerk Aktiengesellschaft*, 230 Kan. 368, 374, 634 P.2d 1127 (1981); *Eurich*, 224 Kan. at 238 (discussing the need to bring all causes of action in one lawsuit).

However, in none of these cases were the courts dealing with a declaratory judgment action to determine insurance coverage. In such an action it would not be appropriate to attempt to litigate what could be a collateral issue, the comparative fault of the agent and the company. Because of the restricted nature of the declaratory judgment action, the one-trial rule, which seeks to avoid multiple trials in damage suits over the issues of fault and damages, is not applicable.

Therefore, it was inappropriate for the district court to grant summary judgment based on that ruling.

Next, Med James challenges the date set by the court commencing the statute of limitations on its claims for negligence, breach of fiduciary duty, and comparative implied indemnity. Med James also argues its claim for implied contractual indemnity is subject to a 3-year statute of limitations.

The interpretation and application of a statute of limitations is a question of law for which an appellate court's review is unlimited. *Brown v. State*, 261 Kan. 6, 8, 927 P.2d 938 (1996).

The district court found Med James' claims for negligence, breach of fiduciary duty, and comparative implied indemnity were subject to a 2-year statute of limitations. K.S.A. 60-513; *U.S. Fidelity & Guar. Co. v. Sulco, Inc.*, 939 F. Supp. 820, 823 (D. Kan. 1996); *Boyle v. Harris*, 22 Kan. App. 2d 686, 695, 923 P.2d 504 (1996). Med James does not dispute this ruling. Instead, Med James challenges the .date upon which the 2-year statute of limitations began to run.

Cases in Kansas have repeatedly held that the critical information to trigger the running of the statute of limitations is knowledge of the fact of injury, not the extent of injury. See *Brueck v. Krings*, 230 Kan. 466, 638 P.2d 904 (1982) (knowledge of negligence of accounting firm, but not extent of damages); *Friends University v. W.R. Grace & Co.*, 227 Kan. 559, 608 P.2d 936 (1980)(knew roof leaked, but took expert to reveal severity of the problem); *Roe v. Diefendorf*, 236 Kan. 218, 689 P.2d 855 (1984)(plaintiff injured in automobile/motorcycle accident, but didn't know the full extent of injuries).

The critical date in this case is July 31, 1997, when Med James' attorney took Simental's statement that she was alleging Barnes had not asked her any questions except for her address and driver's license when filling out the application for insurance. Med James knew or should have known as of July 31, 1997, of Simental's allegations and that those allegations gave rise to a potential indemnity action against Barnes. Med James filed its petition on October 17, 2000—outside the 2-year period. Med James' claims for negligence, breach of fiduciary duty, and comparative implied indemnity are barred by the 2-year statute of limitations in K.S.A. 2001 Supp. 60-513.

Med James correctly argues its claim for implied contractual indemnity is subject to the 3-year statute of limitations under K.S.A. 60-512. See *U.S. Fidelity & Guar. Co. v. Sulco, Inc.*, 939 F. Supp. 820 (3-year statute of limitations applied to claim for implied contractual indemnity). Additionally, Med James correctly states that the statute of limitations on its claim for implied contractual indemnity does not accrue until the indemnitee has suffered an actual loss. "It is well settled in Kansas that an indemnity claim

does not arise until the indemnitee becomes obligated to pay, whether by judgment or settlement." See *St. Francis Regional Medical v. Critical Care, Inc.*, 997 F. Supp. 1413, 1433 (D. Kan. 1997) (citing *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 456, 827 P.2d 24 [1992]). Med James and Guaranty National became obligated on the insurance policy by way of the judgment entered in the declaratory judgment action on April 13, 2000, and the 3 years ran from that date at the very earliest since we do not have any evidence of money judgments entered against Med James and Guaranty National. Med James' claim for implied contractual indemnity are not time barred.

Last, Med James argues the district court erred in relying on old rules developed before comparative fault was the public policy of the state to find that a principal had to be without fault in order to recover in an implied indemnity case against its agent.

The court in *U.S. Fidelity & Guar. Co. v. Sulco, Inc.*, 939 F. Supp. at 824, stated:

"In Kansas, an action for implied contractual indemnity arises where a principal is compelled to pay a third person for the negligent acts of its agent. [Citations omitted.] Where an implied contract for indemnity arises as a result of the agent's negligence, considerations of the principal's fault are appropriate. . . . [A]n implied contract of indemnity may arise when 'one personally without fault is made to pay for the tortious acts of another.' "

Med James' attempts to diminish the effect of *U.S. Fidelity & Guar. Co., v. Sulco, Inc.*, by a subsequent clarifying decision by the court, *U.S. Fidelity & Guar. Co. v. Sulco, Inc.*, 1997 WL 94221 (D. Kan. 1997), is unpersuasive considering the court's continued use of the original *Sulco* decision as authority. In *Nolde v. Hamm Asphalt, Inc.*, 202 F. Supp. 2d 1257, 1271 (D. Kan. 2002), the court stated:

"If it is determined by the jury that Hamm is vicariously liable for Dustrol's negligence, then Hamm may have an independent claim for implied indemnification. However, a claim for implied indemnity is foreclosed to an indemnitee who itself was negligent, apart from the negligence imputed to it by its employee. In short, an indemnitee may only be implicitly indemnified when it is completely without fault. See *United States Fid. & Guar. Co. v. Sulco, Inc.*, 939 F.Supp. 820, 825 (D. Kan. 1996) ('The court finds that where, as in this case, vicarious liability gives rise to a claim for implied contractual indemnity, Kansas law requires the

[indemnitee] to be faultless in order to recover; that is, [the indemnitee]'s liability must be solely derivative.') (citing Kansas cases). See also *St. Francis Reg'l Med. Ctr. v. Critical Care, Inc.*, 997 F.Supp. 1413, 1432 (D. Kan. 1997) (noting that because implied indemnification is equitable in nature, it is generally unavailable to malfeasants)."

The district court correctly found that Med James cannot claim to be without fault in the issuance of the insurance policy to Simental. Guaranty National and Med James accepted Simental's insurance policy after discovering the facts on her application were not true. They even increased her premium based on her driving record. The producer agreement in this case allowed Barnes to receive insurance applications, "but not to accept or bind coverage without prior written authorization from Med James." Med James and Guaranty National had the ultimate authority and control over the decision to issue Simental's insurance policy.

It is undisputed that Med James shared in the responsibility of issuing an insurance policy to Simental. Med James cannot prove it was without fault, and, consequently, it cannot seek indemnification from Barnes based on principles of implied contractual indemnity. A weighing of the relative fault of the parties has no place in an action for implied contractual indemnity because the one seeking indemnity must be without fault. See *Becker v. Buman*, 239 Kan. 342, 349, 721 P.2d 246 (1986) (action for indemnity is inappropriate where the judgment against the party seeking indemnity is based upon the wrongdoing of that party).

Granting summary judgment to Barnes on Med James' claims for negligence, comparative implied indemnity, and breach of fiduciary duty is appropriate based on a running of the 2-year statute of limitations. Granting summary judgment to Barnes on Med James' claim of implied contractual indemnity is appropriate based on the district court's correct determination that Med James cannot seek indemnity. The rest of the issues raised are moot.

Affirmed.